IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 21, 2018 Session

## TRUSTMARK NATIONAL BANK v. SUNSHINE CARWASH NO. 5 PARTNERS ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-13-0100-2     Jim Kyle, Chancellor**

———————————————————

**No. W2017-01759-COA-R3-CV**

———————————————————

In this garnishment case, a judgment creditor garnished funds from the joint bank account of a non-debtor depositor and a debtor. The trial court allowed the garnished funds to be tendered to the judgment creditor because the account agreement showed that the joint account was held with rights of survivorship. Tennessee Code Annotated section 45-2-703(a), however, allows the non-debtor depositor to prove his rights in the funds held in the joint account. Because the non-debtor depositor provided sufficient evidence to prove his rights to the funds in the joint account, the judgment of the trial court is reversed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, P.J., M.S., and BRANDON O. GIBSON, J., joined.

Taylor A. Cates and Lani D. Lester, Memphis, Tennessee, for the appellant, James R. Maddox, Jr.

Jonathan S. Masters, Oxford, Mississippi, for the appellee, Trustmark National Bank.

## OPINION

### BACKGROUND

This appeal results from a bench trial, in which the facts are largely undisputed. Intervenor/Appellant James Maddox formed JMS Partners ("the Partnership") with Mark Johnson and Thomas G. Stovall in 2007. The Partnership's purpose was to "acquire,

own, develop, lease, mortgage, and manage real estate properties." The Partnership began developing an office building located at 3249 W. Sarazens Circle, Memphis, TN ("Sarazens Building"). In September 2011, Mr. Maddox opened a deposit account, with $250,000.00 of his money, at First Citizens National Bank ("First Citizens") for the purpose of securing a loan to the Partnership from First Citizens to complete the Sarazens Building project.

On or about September 29, 2011, the Partnership obtained an $800,000.00 loan from First Citizens to complete renovations on the Sarazens Building. On the same day, First Citizens took, as collateral for the loan, a lien on the Sarazens Building and a security interest in $100,000.00 of the $250,000.00 that Mr. Maddox deposited into the First Citizens deposit account. This $100,000.00 would be released by First Citizens when the second floor of the Sarazens Building reached one-hundred percent occupancy. Additionally, the loan agreement provided that of the $250,000.00 in the account, $150,000.00 could be withdrawn for the sole purpose of renovating the Sarazens Building. The expenses billed against or checks written from this $150,000.00 amount were subject to the approval of Mr. Gene Bridges, Community President of First Citizens. Use of money from the account for any purpose other than renovations to the Sarazens Building would have constituted a breach of the loan agreement.

Contemporaneous with granting First Citizens the security interest in the account, two account agreements were executed on the same day; both are included in the record. One agreement lists Mr. Maddox as the individual account holder. The other agreement lists both Mr. Maddox and Mr. Johnson as account holders and indicates that the ownership type is "joint with survivorship." Mr. Maddox disputes as to how the account agreement adding Mr. Johnson as an account holder was prepared and how the ownership of the account was determined; however, Mr. Maddox did state that he intended Mr. Johnson to be able to write checks from the account for the sole purpose of renovating the Sarazens Building. Although Mr. Maddox and Mr. Johnson both had access to the account, the garnishment was the first activity on the account and no checks were written from the account until after the garnishment occurred. After the garnishment, Mr. Maddox removed Mr. Johnson from the account.

## PROCEDURAL HISTORY

This case arises from an action filed by Trustmark National Bank ("Trustmark") on January 24, 2013. In this underlying action, Trustmark sought to enforce a promissory note under which defendants, Sunshine Carwash #5 Partners, Mark Johnson, and a John Doe Defendant, defaulted. Trustmark was awarded a judgment against Mr. Johnson in the amount of $47,234.50, plus $9,000 in attorney's fees and interest on the judgment.

On July 29, 2015, Trustmark issued a writ of garnishment to First Citizens against all accounts held in Mr. Johnson's name to collect on its judgment. First Citizens

responded to the notice of garnishment and transferred $59,781.30 from Mr. Maddox's and Mr. Johnson's joint account to the Clerk and Master to satisfy the garnishment.

On September 24, 2015, Mr. Maddox filed his motion to release the garnished funds pursuant to Tennessee Code Annotated section 45-2-703, arguing that the statute allowed him to establish the rights he had in the garnished funds. On October 13, 2015, Trustmark responded to Mr. Maddox's motion arguing that it was procedurally improper because the statute required Mr. Maddox to commence a separate action against Trustmark, which Mr. Maddox failed to do. On November 10, 2015, the Chancery Court ordered Mr. Maddox and Trustmark to begin discovery and, upon completion, it would permit the parties to "request a special setting . . . for determination of James R. Maddox, Jr.'s Motion for Release of Garnished Funds pursuant to Tenn. Code Ann. § 45-2-703."[1]

Beginning in January 2017, the parties filed cross-motions for summary judgment. Trustmark filed a rebuttal to Mr. Maddox's cross motion on June 2, 2017. The Chancery Court heard the parties' arguments on June 12, 2017, but declined to rule on the motions instead setting the matter for trial.

The Chancery Court conducted a bench trial on August 3, 2017. At trial, there was no dispute that while Mr. Johnson had access to the funds in the subject account prior to the garnishment, Mr. Maddox was the sole party to deposit funds in the account and that Mr. Johnson had no interest in the funds prior to them being placed in the account. The trial court entered its final judgment on August 23, 2017, denying Mr. Maddox's motion to release the garnished funds. In its judgment, the Chancery Court stated that it denied the motion for the following reasons:

> According to First Citizens National Bank's Account Agreement, received in evidence, Mark C. Johnson and James Maddox, Jr. held the account jointly with rights of survivorship.
>
> Based on the testimony and evidence presented at trial, the subject First Citizens National Bank account is subject to garnishment for the judgment against Mark C. Johnson.

From this judgment, Mr. Maddox timely appeals.

## ISSUE

---

[1] It seems as though Trustmark abandoned its argument that the motion was procedurally improper after the Chancery Court entered this order. Trustmark does not make any argument regarding a procedural defect in any subsequent phase of litigation, including in their Appellate brief.

Mr. Maddox presents one issue on appeal, which we have restated: Whether Trustmark is entitled to garnish an account jointly held by Mr. Maddox, a non-debtor depositor, and Mr. Johnson, Trademark's judgment debtor, under Tennessee Code Annotated section 45-2-703?

## STANDARD OF REVIEW

This Court reviews the trial court's findings in a bench trial "de novo and presumes that the trial court's findings of fact are correct unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Miller v. Jackson-Madison County General Hospital District*, No. W2015-01170-COA-R3-CV, 2016 WL 7166410, at * (Tenn. Ct. App. Dec. 8, 2016) (citing *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.,* 194 S.W.3d 415, 425 (Tenn. 2005)). Issues regarding statutory construction are questions of law. *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 924 (Tenn. 1998) (citing *Roseman v. Roseman*, 890 S.W.2d 27, 29 (Tenn. 1994)). This Court reviews questions of law de novo with no presumption of correctness. *Id.*

The statutory interpretation principles are well-established in Tennessee law. This Court's role, and the most basic rule of statutory construction, "is to ascertain and give effect to the intention and purpose of the legislature." *In re Shelby L. B.*, No. M2010-00879-COA-R9-PT, 2011 WL 1225567, at *3 (March 31, 2011) (citations omitted). This Court additionally "presume[s] that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing." *SunTrust Bank v. Burke*, 491 S.W.3d 693, 695 (Tenn. Ct. App. 2015), *perm. app. denied* (Tenn. June 15, 2015) (quoting *Lind v. Beaman Dodge*, 356 S.W.3d 889, 895 (Tenn. 2011)). "When a statute is clear, we apply the plain meaning without complicating the task." *Lind*, 356 S.W.3d at 895 (citing *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn. 2004)). When the statute is ambiguous, however, "we may reference the broader statutory scheme, the history of legislation, or other sources." *Id.* (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)).

## DISCUSSION[2]

---

[2] As a preliminary matter, this Court notes that the findings of facts contained in the trial court's judgment are scant. Tennessee Rule of Civil Procedure 52.01 states that in a bench trial, the trial court is required to make findings of fact and conclusions of law to support its decision. *See* Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment."). "Such findings provide this Court with a clear basis for a trial court's decision for purposes of appellate review." *In re Conservatorship of Stiefel*, No. W2016-02598-COA-R3-CV, 2017 WL 5067493, at *5 (Tenn. Ct. App. Nov. 3, 2017) (citing *Lovelace v. Copley*, 418 S.W.3d 1, 34 (Tenn. 2013)). Therefore, "'[s]imply stating

The issue in this case centers on the interpretation of Tennessee Code Annotated section 45-2-703, which states in pertinent part:

> When a deposit has been made or is hereafter made, in any bank, in the names of two (2) or more persons, payable to either, or survivor, the deposit, or any part of the deposit, or any interest or dividend on the deposit, may be paid to either person, whether the others are living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made. Any balance so created, including, but not limited to, any balance held by spouses, shall be subject to assignment by, or the claim of any creditor of, either depositor, as if the depositor were the sole owner of the funds; provided, that if the creditor realizes its claim by any means other than enforcement of an assignment, pledge, or the grant of a security interest made by any one (1) of the depositors, any other depositor not indebted to the creditor may, by commencing a separate action against the creditor, establish the rights that the depositor may have in the funds.

Tenn. Code Ann. § 45-2-703(a).

The parties assert and we agree that section 45-2-703(a) is not a model of clarity. In our view, the statute is essentially divided into two separate parts involving two different sets of parties. As we perceive it, the first portion of the statute was intended to protect banking institutions from being forced to decide whether or not to garnish funds from a joint account. *Avenell v. Gibson*, No. E2004-01620-COA-R3-CV, 2005 WL 458733, at *4 (Tenn. Ct. App. Feb. 28, 2005). As such, this portion of the statute governs a dispute between the judgment creditor and the debtor. According to this section, the creditor is entitled to garnish, and the bank is obligated to release, funds in a joint account so long as the funds in the account are "payable" to the debtor or the debtor has a survivorship interest in the account. Thus, there is no dispute that Trustmark properly garnished, and First Citizens properly transferred, the funds held in the joint account under this portion of section 45-2-703(a).

---

the trial court's decision, without more, does not fulfill [the Rule 52.01] mandate.'" *Id.* (quoting *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015)).

Here, the trial court does provide that there was evidence that Mr. Maddox and Mr. Johnson "held the account jointly with rights of survivorship." It then goes on to explain that "[b]ased on the testimony and evidence presented at trial, the subject . . . bank account is subject to garnishment for the judgment against [Mr.] Johnson." The trial court, however, engages in no discussion of the evidence or testimony that was actually presented at trial. Because there is a clear legal question—statutory interpretation—we will continue with our analysis. *See id.*

The dispute in the case concerns the second portion of this statute, which involves a dispute between the creditor who garnished the funds from the joint account and a non-debtor account holder. Under this portion of the statute, "any other depositor not indebted to the creditor[,]" i.e. the non-debtor, may commence a separate action against the creditor to "establish the rights that the [non-debtor] depositor may have in the funds."

Here, Trustmark does not dispute that Mr. Maddox is a non-debtor account holder. The parties in this case disagree, however, as to what proof is necessary for the non-debtor account holder to establish his or her rights in the funds garnished from the joint account. Mr. Maddox generally argues that the statute allows him to "prove that the amounts belong[] to him" and that "Trustmark is not entitled to keep funds garnished from this joint account simply because Mr. Johnson is an account signatory, or because the box for joint tenancy is checked on the account agreement." Conversely, Trustmark argues that "[Mr.] Maddox failed to meet his statutor[y] burden" because "by the terms of the jointly held account, either [Mr.] Johnson or [Mr.] Maddox had full, unfettered access to the funds." To resolve this dispute, we turn to caselaw interpreting section 45-2-703(a).

In *Avenell v. Gibson*, this Court discussed the applicable statute in depth. *See generally Avenell*, 2005 WL 458733. In that case, Mr. and Mrs. Avenell were married and held a joint account as "[j]oint tenants with right of survivorship." *Id.* at *1. After the account was opened, the creditor obtained a judgment against Mr. Avenell alone. *Id.* The creditor then garnished the Avenells' joint account for the amount of the judgment, and the bank paid into court the judgment amount from both the Avenells' joint checking and savings accounts. *Id.* Later, Mrs. Avenell sought to recover the funds the creditor had obtained from the joint account, pursuant to the second prong of section 45-2-703(a). *Id.* The trial court found that Mrs. Avenell failed to prove her "separate entitlement to the funds [garnished] upon; and that the creditor was entitled to retain the fruits of his [garnishment]." *Id.* Mrs. Avenell appealed. *Id.*

In *Avenell*, this Court explained the rights of the creditors and the rights of the non-debtor depositors in the context of section 45-2-703(a). *Id.* Citing to the testimony of Mr. William A. Byrne, Jr., who testified before the House Commerce Committee in 1988, *Avenell* explained that

> the law[] merely emphasizes that a creditor ha[s], and still ha[s], the right to *[garnish]* upon the funds in jointly-held bank accounts; it does not mean that the creditor ultimately will be entitled to *keep* the funds [garnished] upon. The creditor's right to *keep* the funds will depend upon the proof adduced at the hearing in the subsequently-filed separate action by the non-debtor depositor.

*Id.* at *5 (emphasis in original).  In other words, "the statute simply instructs banks to (1) pay the funds into court, (2) get out of the way, and (3) let the non-debtor depositor 'fight it out' with the creditor by showing 'such rights as that depositor may have with the funds.'" *Id.* at *6.

*Avenell* also provides guidance in explaining the burden required by the non-debtor depositor to prove its rights in the funds. *See id.* at *7.  Although this case deals with married joint account holders, it specifically states that "[i]n the case of *unmarried*" joint account holders, the non-debtor depositor is "required to prove that all, or part of, the [garnished]-upon funds [are] directly attributable to him or her to the exclusion of the debtor depositor, in order for that portion of funds to be returned to the non-debtor depositor." *Id.* (emphasis added). In the case at bar, according to the *Avenell* analysis, it is Mr. Maddox's burden to prove that all, or part of, the garnished funds in the joint account were "directly attributable to him . . . to the exclusion of [Mr. Johnson]." *Id.*

Trustmark asserts that Mr. Maddox has not met this burden.  Specifically, Trustmark argues that Mr. Maddox cannot prove that the funds in the joint account were held to the exclusion of Mr. Johnson because "the account's signature card undeniably provides that Mr. Johnson was a joint tenant with right of survivorship in the account, and had full and complete access to the funds in the account."  Therefore, Trustmark argues, Mr. Maddox failed to hold the funds to the exclusion of Mr. Johnson by the express terms of the account agreement.

As an initial matter, we note that plain language of section 45-2-703(a) does not contain a requirement that the non-debtor account holder prove that the funds held in a joint non-marital account are in any way "exclusive" to the  non-debtor. *See generally* Tenn. Code Ann. § 45-2-703(a). *But see Avenell*, 2005 WL 458733, at *7 (including this requirement for non-marital accounts). Rather, section 45-2-703(a) merely requires that the non-debtor establish his or her rights in the disputed funds. *Id.* Even applying the *Avenell* exclusivity standard, Mr. Maddox contends that he has met his burden by showing that he is the exclusive source of the funds in this case. According to Mr. Maddox, if this Court were to accept Trustmark's argument, the non-debtor depositor would never be able to prove that the funds were "directly attributable [to the non-debtor depositor] to the exclusion" of the debtor because the debtor merely had access to the joint account.  We agree that Mr. Maddox has met his burden to establish his rights in the funds in dispute.

In reaching this result, we find this Court's decision in ***Al-Haddad Brothers v. Interparex Ledden KG***, No. 01-A-019207-CH-00298, 1993 WL 4858 (Tenn. Ct. App. 1993), helpful. In ***Al Haddad***, the defendant-creditor sought to garnish funds from counter-defendant/debtor Sahib Al-Haddad's personal assets, which included an account with his purported wife, Dr. Rafah Al-Haddad.  ***Al-Haddad Brothers***, 1993 WL 4858 at

\*1–\*3.[3]  The bank paid the garnishment request to the clerk and master, following orders of the trial court.  *Id.* at \*1.  Dr. Al-Haddad then filed a motion to intervene and contest the garnishment under Tennessee Code Annotated section 45-2-703(a) on the ground that "the attached fund was held by movants as tenants by the entirety and was not subject to the claim of a creditor to Sahib Al-Haddad alone."[4]  *Id.*  The trial court granted Dr. Al-Haddad's motion to intervene but ultimately found that Mr. Al-Haddad had fraudulently conveyed the funds into the couple's joint account in order to avoid the claims of creditors and therefore, ordered the funds to be disbursed to the creditor.  *Id.*  Dr. Al-Haddad appealed, arguing, in relevant part, that "[t]here was no evidence to support the trial court's finding that the funds in the garnished bank account 'belonged to and were placed there by Sahib Al-Haddad.'"  *Id.*

Citing Tennessee Code Annotated section 45-2-703(a), this Court reasoned that Dr. Al-Haddad, as the "'other depositor,' had the burden of proving her rights in the attached funds."  *Id.* at \*2 (quoting Tenn. Code Ann. § 45-2-703(a)).  Focusing on three deposits into the joint account, the appellate court concluded that "[t]here is evidence to support the finding that the three deposits mentioned, in the total amount of $18,729.18 were the property of [Mr. Al-Haddad] and were *by him placed* into the account in question."  *Id.* at 3 (emphasis added).  This evidence "negated" Dr. Al-Haddad's claim that the funds in the joint account were in fact her property.  *Id.*  Accordingly, Dr. Al-Haddad failed to prove that the deposits in the joint account were directly attributable to her to the exclusion of Mr. Al-Haddad and her claim to the deposited funds "must fail."  *Id.*

According to this court's interpretation of Tennessee Code Annotated section 45-2-703(a), a non-debtor meets his or her burden to establish rights in the disputed funds by showing that the non-debtor is the *source* of the funds to the exclusion of the debtor, *i.e.* that the funds were solely deposited in the account by the non-debtor.  The court in ***Al-Haddad Brothers*** clearly considered which account holder was the source or the

---

[3] The trial court in this case found that there was sufficient evidence to show that the Al-Haddads entered into a void marriage because Mr. Al-Haddad was previously married and his previous marriage was not dissolved when he and Dr. Rafah Al-Haddad were married.  *Al-Haddad Bros.*, 1993 WL 4858 at \*4.  ("There was evidence, which was evidently accepted by the Trial Court, that counter-defendant contracted a previous marriage in January, 1970, which was not dissolved by divorce until September, 1977.  The evidence also shows that, counter-defendant married movant prior to said divorce, in 1975.").

[4] Dr. Rafah Al-Haddad asserted both in the trial court and on appeal that the funds in the joint account were her property, and not subject to a claim by the creditor of Sahib Al-Haddad alone, because she and Sahib Al-Haddad held their joint account as tenants by the entirety.  *Id.* at \*1.  The trial court did not seem to make a finding on this specific issue.  *See id.* ("[T]he Trial Court entered an order declaring the transfers of funds by the judgment debtor into the subject bank account were fraudulent conveyances . . . and order[ed] the funds . . . to be disbursed to the judgment creditor.").  This Court, however, found that the Al-Haddads could not have held the joint account as tenants by the entirety because they had entered into a void marriage.  *Id.* at \*4 ("An estate by the entireties cannot be based upon a void marriage.").

contributor of the funds in the joint account rather than the simple fact that both Mr. Al-Haddad and Dr. Al-Haddad had access to the account. *Id.* at *3 (concluding that the funds deposited into the joint bank account were "placed" in the account by Mr. Al-Haddad). Additionally, we note that neither the court in *Avenell* nor in *Al-Haddad Brothers* held that a debtor's access to the funds in an account, alone, was sufficient to defeat the non-debtor's depositor's claim under section 45-2-703(a). Indeed, had the courts held that access alone was sufficient, there would have been no need for any analysis in either case, as there appeared to be no dispute in both *Avenell* and *Al-Haddad Brothers* that both account holders had access to the funds in the joint account. *See Avenell*, 2005 WL 458733, at *1 (Tenn. Ct. App. Feb. 28, 2005) (noting that the account was a joint account, but not holding that wife's access to the account defeated her effort to establish her rights in the funds); *Al-Haddad Brothers*, 1993 WL 4858 at *1–*3 (noting that the account was a joint account with a right of survivorship, but not discussing *access* to the funds in any fashion in determining the issue of the non-debtor's rights to the funds). Consequently, the fact that both the debtor and non-debtor had *access* to the funds in the joint account will not defeat a claim by the non-debtor to establish rights in the funds under section 45-2-703(a).

To hold otherwise would essentially render the second portion of the statute meaningless in the context of a joint account "payable to either." *See In re Samaria S.*, 347 S.W.3d 188, 203 (Tenn. Ct. App. 2011) ("The statute should not be interpreted to render any part of it meaningless or superfluous."); *Goodman v. City of Savannah*, 148 S.W.3d 88, 93 (Tenn. Ct. App. 2003) ("[This Court] cannot adopt an interpretation that renders the statute meaningless."). As noted above, the first portion of section 45-2-703(a) provides a creditor with nearly an absolute right to garnish the funds held in an account by two or more parties when one of those parties is its debtor. Even when the funds in the joint account is "payable to either," i.e. accessible by all parties on the account, the second part of the statute still allows the non-debtor depositor to establish his or her right in the funds and request that those funds be returned by the creditor. Nothing in section 45-2-703(a) indicates that this mechanism is limited to the unusual situation wherein only one party currently has the right to access the funds, but the debtor maintains a survivorship interest in the account. To hold that a judgment creditor may garnish and keep the garnished funds from a joint account simply because the debtor has access to the account would essentially negate the non-debtor's right in all cases where the account is "payable to either." We decline to interpret section 45-2-703(a) in such a limited fashion that is inconsistent with the statute's plain language and intent.

Applying section 45-2-703(a) to the facts of this case, we conclude that Mr. Maddox is entitled to the funds in the account. Here, it is undisputed that Mr. Maddox was the sole contributor of the funds deposited into the joint bank account. As such, regardless of Mr. Johnson's access to the funds, Mr. Maddox was the party who placed the funds into the account and was the sole source of the funds. *See Al-Haddad Brothers*, 1993 WL 4858 at *3. Additionally, there was no evidence that Mr. Johnson had any right

to the funds other than an ability to disburse the funds solely for purposes of the Partnership. Consequently, Mr. Maddox has met his burden to "establish the rights" he has in the funds.[5] As such, Mr. Maddox is entitled to "dismissal of the [garnishment] of execution and a release of the funds." *Avenell*, 2005 WL 458733, at *7. All issues regarding the joint account as partnership property are therefore pretermitted.

## CONCLUSION

The judgment of the Shelby County Chancery Court is reversed, and this cause is remanded for further proceedings consistent with this Opinion. The costs of this appeal are taxed to Plaintiff/Appellees Trustmark National Bank, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[5] Because this case involves relatively straightforward facts wherein there is no dispute that Appellant is the sole source of the funds at issue and that Mr. Johnson had no right in or to the funds outside of business involving the construction of the building for the Partnership, we need not reach the more difficult question of whether other types of evidence may be sufficient to establish rights in disputed funds pursuant to section 45-2-703(a).