# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 19, 2019 Session

## ALLAN BRADLEY FLYNN v. MEGAN MARIE STEPHENSON

**Appeal from the Juvenile Court for Cumberland County**
**No. 2017-JV-6616     Larry M. Warner, Judge**

_____

### No. E2019-00095-COA-R3-JV

_____

This action involves the trial court's establishment of a permanent parenting plan for a child born to the unmarried parties. Allan Bradley Flynn (father) appeals the trial court's decision ordering a permanent parenting plan giving him less than 80 days per year parenting time. Megan Marie Stephenson (mother) appeals the court's decision to change the child's surname to Flynn. The trial court made no findings of fact supporting its ordered parenting plan, which it referenced as providing "standard visitation." The trial court made no reference to the governing statute, Tenn. Code Ann. § 36-1-106 (2017), nor any of the factors provided in the statute. We vacate the trial court's judgment and remand with instructions to make sufficient findings of fact and conclusions of law as required by Tenn. R. Civ. P. 52.01. We hold that father failed to carry his burden of proving that a name change will further the best interest of the child, and consequently we reverse the trial court's judgment ordering the child's name changed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated in Part and Reversed in Part; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Jason F. Hicks and Blake J. Fitzpatrick, Cookeville, Tennessee, for the appellant, Allan Bradley Flynn.

Vanessa Samano, Knoxville, Tennessee, for the appellee, Megan Marie Stephenson.

-1-

**OPINION**

**I.**

The child was born on July 23, 2017. Father, on September 8, 2017, filed this action petitioning the trial court to grant him "joint and equal parenting time." He filed a proposed plan giving each parent 182.5 days of parenting time per year. The parties entered a mediated agreement establishing a temporary parenting schedule as follows:

> The parties agree that father shall have the child every Friday from 3:00pm to Saturday at 3:00pm, every other Sunday from 8:00am to 3:30pm, Sunday visits will begin Sunday, February 11, 2018 and every Wednesday from 3:00pm to 7:00pm, for the next eight (8) weeks or until the final hearing is set, which ever shall occur first.

> \* \* \*

> Current support is being set at $259.00 per month[.] [T]his is based on minimum wage being imputed for both parents and father having 80 days per year and mother having 285 days per year.

On May 7, 2018, father filed a "motion for increased parenting time pending litigation." He asserted, in pertinent part, as follows:

> [Father] would show that he has attend[ed] all the visits and the visits have gone well with the child.

> The mediated agreement was entered with the understanding that a final hearing would be held soon thereafter.

> \* \* \*

> The mother and her counsel refuse to cooperate in responding to multiple requests regarding extended parenting time.

-2-

> That it is in the best interest of the minor child to have increased time with [father] during the formative months to build a strong parent-child bond.

(Numbering in original omitted).

The trial court entered an order on July 18, 2018, stating that father "shall receive[] the standing standard parenting time of this Court and as further stated in the temporary parenting plan attached to this Order." The temporary parenting plan provides father parenting time from Friday at 6:00 pm until Sunday at 6:00 pm every other week and every Wednesday afternoon from 3:30 pm until 7:00 pm. It further provides for "two non-consecutive weeks in summer" for father.

Mother filed a response to father's petition for parenting time on December 3, 2018. She attached another proposed parenting plan that states she would have 265 days of parenting time, and father 100 days. A brief trial took place four days later. Only father testified. Although mother was present with her attorney, she was not called to testify. Father testified that he was renting a house with two bedrooms and two bathrooms, suitable for the child's visitation. He is self-employed, working as partners with his father installing fireplaces. Father said that their business was just recently started, so they were trying to get established and he was living primarily off of his savings at the time of the hearing. He testified at one point that he "had no concerns" with mother, but later stated that he was concerned that she had issues with depression and her finances. Father also stated a concern that mother was living with her parents and her autistic brother, whom father described as "violent." There was no other evidence presented concerning mother's living arrangements. Apparently no discovery was conducted, for there are no discovery documents in the record. The transcript of father's testimony is only 37 pages long.

The trial court's two-page final order states only: "[t]he Court found that it is in the best interests of the child to set a visitation schedule for the Father pursuant to the Court's Standard Visitation Order." There are no other findings of fact. The order incorporates by reference a permanent parenting plan, which recites that mother shall have 305 days per year of parenting time and father 60 days. It gives father time with the child every other weekend from Friday at 5:00 pm until Sunday at 5:00 pm, and every Wednesday from 5:00 to 7:00 pm. Father was granted two non-consecutive weeks of summer vacation, and major holidays were split fairly evenly. Regarding winter vacation, the parenting plan also provides:

> The mother shall have the child for the first period from the day and time school is dismissed until December 25th at

-3-

Noon (12:00 p.m.) in even-numbered years. The [father] will have the child or children for the second period from the day and time indicated above until Noon (12:00 p.m.) on New Year's Day. The parties shall alternate the first and second periods each year.

Although it is impossible to calculate with complete precision the number of days the more specific provisions of the parenting plan provides each parent, because, among other things, the child is not of school age yet, it appears that father has approximately 77 days per year, notwithstanding the plan's general provision of 60 days to father. No explanation is provided for this discrepancy. There is also no explanation in the record for why the trial court awarded father 40 days less than that provided in mother's own proposed parenting plan filed four days before trial. At father's request and over mother's objection, the trial court ordered the child's surname to be changed to Flynn. Father timely filed a notice of appeal.

## II.

Father raises the following issues:

> Whether the trial court erred by failing to make findings of fact and conclusions of law as required by Tenn. R. Civ. P. 52.01.

> Whether the trial court failed to comply with Tenn. Code Ann. § 36-6-106(a), which requires "a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out" in the statute.

Mother raises the issue of whether the trial court erred in changing the child's surname.

## III.

Our standard of review is as recently stated by this Court as follows:

> Decisions involving the custody of a child are among the most important decisions faced by the courts. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). Indeed, "by statute as well as case law, the welfare and best interests of the child are the paramount concern in custody, visitation, and

residential placement determinations, and the goal of any such decision is to place the child in an environment that will best serve his or her needs." ***Burden v. Burden***, 250 S.W.3d 899, 908 (Tenn. Ct. App. 2007) (quoting ***Cummings v. Cummings***, No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at \*5 (Tenn. Ct. App. Oct. 15, 2004)). As such, "trial courts have broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case, and the appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation." ***Reeder***, 375 S.W.3d at 278 (citing ***Parker v. Parker***, 986 S.W.2d 557, 563 (Tenn. 1999)); *see also* ***C.W.H. v. L.A.S.***, 538 S.W.3d 488, 495 (Tenn. 2017) (quoting ***Armbrister v. Armbrister***, 414 S.W.3d 685, 693 (Tenn. 2013)) ("Determining the details of parenting plans is peculiarly within the broad discretion of the trial judge.").

While trial courts are afforded broad discretion in this area, "they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law." ***Gaskill v. Gaskill***, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996) (citing ***D. v. K.***, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995)). Thus, a trial court's decision regarding custody will be set aside only if it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." ***In re Adoption of A.M.H.***, 215 S.W.3d at 809.

***Grissom v. Grissom***, No. W2018-01570-COA-R3-CV, 2019 WL 2158343, at \*2 (Tenn. Ct. App., filed May 17, 2019) (brackets in original omitted).

### IV.

### A.

Father argues that the trial court failed to comply with Tenn. R. Civ. P. 52.01, which requires that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." A decade has passed since this rule was amended to require trial courts to make such findings and conclusions irrespective of whether a party specifically requests them. *See* ***Turman v. Turman***, No. W2014-01297-COA-R3-CV,

2015 WL 1744278, at *4 (Tenn. Ct. App., filed Apr. 14, 2015). Over the last ten years, this Court has addressed the identical issue raised by father a remarkable number of times. *See Grissom*, 2019 WL 2158343, at *1 ("Because we conclude that the trial court's order regarding the designation of the child's primary residential parent does not contain sufficient findings of fact such that meaningful appellate review is possible, we vacate the order of the trial court and remand for further proceedings"); *Williams v. Williams*, No. W2017-02023-COA-R3-CV, 2018 WL 3532077, at *1 (Tenn. Ct. App., filed July 23, 2018) ("Because the trial court did not make sufficient findings of fact and conclusions of law as required under Tennessee Rule of Civil Procedure 52.01, we vacate the trial court's judgment"); *In re Carter K.*, No. M2017-01507-COA-R3-JV, 2018 WL 896060, at *5 (Tenn. Ct. App., filed Feb. 14, 2018) ("nothing in the juvenile court's Parenting Plan Order indicates that the court considered the applicable statutory factors, or explains why the parenting plan is in the minor child's best interest"); *In re Briley R.*, No. M2016-01968-COA-R3-JV, 2017 WL 5054304, at *4-5 (Tenn. Ct. App., filed Oct. 31, 2017); *Brainerd v. Brainerd*, No. M2015-00362-COA-R3-CV, 2016 WL 6996365, at *8 (Tenn. Ct. App., filed Nov. 30, 2016) (remanding where "[t]he court's rulings do not refer to the statutory best interest factors at all"); *Thompson v. Thompson*, No. M2014-02124-COA-R3-CV, 2015 WL 9594647, at *1 (Tenn. Ct. App., filed Dec. 30, 2015); *Gooding v. Gooding*, 477 S.W.3d 774, 776 (Tenn. Ct. App. 2015); *In re Noah J.*, No. W2014-01778-COA-R3-JV, 2015 WL 1332665, at *5 (Tenn. Ct. App., filed Mar. 23, 2015) ("The importance of Rule 52.01 findings of fact and conclusions of law cannot be underscored enough, particularly in a fact-intensive matter such as a case in which the parenting arrangement is at issue."); *Olson v. Beck*, No. M2013-02560-COA-R3-CV, 2015 WL 899381, at *6 (Tenn. Ct. App., filed Feb. 27, 2015); *Howell v. Howell*, No. M2013-02260-R3-CV, 2014 WL 7466654, at *7-8 (Tenn. Ct. App., filed Dec. 30, 2014); *Ward v. Ward*, No. M2012-01184-COA-R3-CV, 2013 WL 3198157, at *14-15 (Tenn. Ct. App., filed June 20, 2013); *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *4 (Tenn. Ct. App., filed Feb. 22, 2013); *In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App., filed Nov. 8, 2012); *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *7-8 (Tenn. Ct. App., filed Oct. 24, 2012). All fourteen of the above-cited cases were decided in the specific context of creating an initial residential parenting schedule in a parenting plan.

We have *repeatedly* emphasized the importance of detailed factual findings in cases involving parenting arrangements. A typical example of what this Court has often reiterated is found in *In re Briley R.*:

> Findings of fact are particularly important in cases involving the custody and parenting schedule of children, as these determinations often hinge on subtle factors, including the

parents' demeanor and credibility during the proceedings. *In re Connor S.L.*, No. W2012–00587–COA–R3–JV, 2012 WL 5462839, at \*4 (Tenn. Ct. App. Nov. 8, 2012) (internal quotations omitted). The parties themselves deserve to know the factual basis for the trial court's decision on such important matters. *Ward*, 2013 WL 3198157 at \*15. Trial courts also need to be as precise as possible in making child custody findings in order to facilitate appellate review. *In re Connor S.L.*, 2012 WL 5462839 at \*7 (quoting *In re Elaina M.*, No. M2010–01880–COA–R3–JV, 2011 WL 5070901, at \*8 (Tenn. Ct. App. Oct. 25, 2011)).

Under Rule 52.01, a trial court's order should indicate why and how it reached a decision and which factual findings led the court to rule as it did. *Pandey v. Shrivastava*, No. W2012–00059–COA–R3–CV, 2013 WL 657799, at \*4 (Tenn. Ct. App. Feb. 22, 2013). Although the court need not list every applicable statutory factor [in Tenn. Code Ann. § 36-6-106] and an accompanying conclusion for each factor, the trial court is required to "consider all applicable factors." *See id*. (quoting *In re Connor S.L.*, 2012 WL 5462839, at \*7). But we have no indication that a trial court has considered all applicable statutory factors apart from its written order. *Anil Const., Inc. v. McCollum*, No. W2013–01447–COA–R3–CV, 2014 WL 3928726, at \*8 (Tenn. Ct. App. Aug. 7, 2014) ("It is well-settled that a trial court speaks through its written orders – not through oral statements contained in the transcripts – and that the appellate court reviews the trial court's written orders.") (citing *Alexander v. JB Partners*, 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011); *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977)).

If we cannot determine from the trial court's written order what legal standard it applied or what reasoning it employed, then the trial court has not complied with Rule 52.01. *See Ray v. Ray*, No. M2013–01828–COA–R3–CV, 2014 WL 5481122, at \*16 (Tenn. Ct. App. Oct. 28, 2014). The reviewing court must be able to ascertain "the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)

(quoting 9C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2579, at 328 (3d ed. 2005)). "Without such findings and conclusions, this court is left to wonder on what basis the trial court reached its ultimate decision." *In re M.E.W.*, No. M2003–01739–COA–R3–PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004). That is precisely the scenario we face in this case.

2017 WL 5054304, at *5 (brackets and internal quotation marks omitted).

Our review of the above-cited caselaw indicates that the trial court's one-sentence finding that "it is in the best interests of the child to set a visitation schedule for the Father pursuant to the Court's Standard Visitation Order" is plainly insufficient. Mother argues that we should consider the brief statements orally made by the trial court at the end of the trial as "findings of fact." These statements, found on less than two pages of the trial transcript, were not incorporated by reference in the trial court's final order. "No principle is better known than that which states that a Court speaks through its orders and decrees entered upon the minutes of the Court." *In re Lennon R.*, No. M2018-00541-COA-R3-JV, 2019 WL 2226007, at *12 (Tenn. Ct. App., filed May 23, 2019) (quoting *Palmer*, 562 S.W.2d at 837). This Court, in child custody and parenting schedule cases, has consistently rejected the argument made by mother. *See, e.g., In re Lennon R.*, 2019 WL 2226007, at *12; *In re Briley R.*, 2017 WL 5054304, at *5; *In re Britton H-S*, No. M2016-01576-COA-R3-JV, 2018 WL 1040945, at *3 (Tenn. Ct. App., filed Feb. 23, 2018) ("Generally, we do not review a court's oral statements unless the oral ruling was incorporated into the written decree."); *In re Noah J.*, 2015 WL 1332665, at *5 ("the magistrate's oral comments . . . are no substitute for specific written factual findings and conclusions of law to justify the court's parenting arrangement and to comply with the mandates of Rule 52.01."); *In re Connor S.L.*, 2012 WL 5462839, at *5.

A trial court making a custody determination is required to apply the following analysis mandated by the Tennessee General Assembly at Tenn. Code Ann. § 36-6-106:

> (a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a),

-8-

the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . .

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

As already noted, the trial court's final order does not mention this statute or any of its factors. Father argues that the residential parenting schedule in the plan ordered by the trial court does not comport with the statute's requirement that "the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child" consistent with the statutory factors and the child's best interest.[1] This "maximum participation possible" principle was enacted in an amendment

---

[1] Father further argues that the trial court's order of what it considered to be "standard visitation" is "a throwback to the tender years doctrine," which has not been the law in Tennessee for many years.

to Tenn. Code Ann. § 36-6-106(a) that became effective June 6, 2011. *See, e.g.*, ***Barnes***, 2012 WL 5266382, at \*7-8 ("On remand, we specifically draw the trial court's attention to [the] amendment . . . that became effective shortly before the trial in this cause"). This Court has on several occasions interpreted this principle as requiring that "Tennessee courts must now fashion custody arrangements so as to give each parent the maximum amount of time possible with the child, in accordance with the child's best interests." ***Rountree v. Rountree***, 369 S.W.3d 122, 129 (Tenn. Ct. App. 2012); ***Strickland v. Strickland***, No. M2012-00603-COA-R3-CV, 2012 WL 6697296, at \*10 (Tenn. Ct. App., filed Dec. 21, 2012); ***Henson v. Henson***, No. W2011-02504-COA-R3-CV, 2012 WL 3064102, at \*3 (Tenn. Ct. App., filed July 30, 2012).

In cases where we have found that the trial court did not comply with the "maximum participation possible" aspiration, we have vacated the trial court's residential parenting schedule and remanded for a more equal division of parenting time. ***In re Lennon R.***, 2019 WL 2226007, at \*14 (on remand, "we instruct the trial court to fashion a more equal parenting schedule between the parties"); ***In re Grace N.***, No. M2014-00803-COA-R3-JV, 2015 WL 2358630, at \*5 (Tenn. Ct. App., filed May 14, 2015) ("We remand the matter with instructions to increase Father's parenting time to *at least* the minimum 80 days presumed by the [Child Support] Guidelines") (emphasis in original); ***Gooding***, 477 S.W.3d at 784; ***McDaniel v. McDaniel***, No. M2012-01892-COA-R3-CV, 2013 WL 3958388, at \*3-4 (Tenn. Ct. App., filed July 29, 2013); ***Strickland***, 2012 WL 6697296, at \*14; ***Barnes***, 2012 WL 5266382, at \*7-8.

At the same time, we have reaffirmed the principle that the best interest of the child, not the "maximum participation possible" concept, remains the primary consideration under the governing statutory scheme, as stated in ***In re Cannon H.*** as follows:

> Father's argument suggests that permitting both parents to enjoy the maximum participation possible in the child's life should be the court's primary consideration in ordering a custody arrangement. That is not the case. The plain language of Section 36-6-106(a) directs courts to order custody arrangements that allow each parent to enjoy the maximum possible participation in the child's life only to the extent that doing so is consistent with the child's best interests. Indeed, the General Assembly has expressly declared that in any proceeding involving custody or visitation of a minor child, the overarching "standard by

---

The tender years doctrine is not mentioned or implied in the record before us. The argument that the trial court applied it silently is speculative, and, given our ruling in this opinion, moot.

which the court determines and allocates the parties' parental responsibilities" is "the best interests of the child." Tenn. Code Ann. § 36-6-401(a) (2014); *see also **Armbrister***, 414 S.W.3d at 693 (citing Tenn. Code Ann. § 36-6-106(a)); ***Luke v. Luke***, 651 S.W.2d 219, 221 (Tenn. 1983) (stating that for courts adjudicating child custody disputes, "the welfare of the child has always been the paramount consideration").

No. W2015-01947-COA-R3-JV, 2016 WL 5819218, at *6 (Tenn. Ct. App., filed Oct. 5, 2016).

Furthermore, we have stated that the "maximum participation possible" principle does not alter or diminish the trial court's broad discretion in fashioning permanent parenting plans in accordance with the best interest of the child. In ***Gooding***, for example, we stated that "[o]ur ruling, however, does not mandate that the trial court establish a parenting schedule that provides equal parenting time because crafting a specific parenting schedule remains within the discretion of the trial court." 477 S.W.3d at 784 n.7. We recognize that there are a myriad of factors that could support a parenting plan that does not provide equal or nearly equal parenting time for both parents. In cases where such a conclusion is supported by the evidence, it is incumbent upon the trial court to say so, in express findings of fact contained in its written order.

In ***Barnes***, upon our remand to the trial court under similar circumstances, we stated the following:

> In light of the passage of time and the nature of the case, the trial court may, in its discretion, consider additional evidence. "[E]vents and lives have not stood still while this custody dispute has been in the courts." ***Wall v. Wall***, No. W2010–01069–COA–R3–CV, 2011 WL 2732269, at *26 (Tenn. Ct. App. July 14, 2011) (quoting ***Gorski v. Ragains***, No. 01A01–9710–GS–00597, 1999 WL 511451, at *4 (Tenn. Ct. App. July 21, 1999)); *see also **Hawkins v. O'Brien***, No. M2008–02289–COA–R3–CV, 2009 WL 2058802, at *6 (Tenn. Ct. App. July 15, 2009).

2012 WL 5266382, at *9; *see also **In re Carter K.***, 2018 WL 896060, at *6 ("In light of the passage of time and events taking place in the lives at stake, the juvenile court may, in its discretion, consider additional evidence to ensure that any custody order is based on the parties' current actual circumstances."); ***In re Noah J.***, 2015 WL 1332665, at *6 ("This opinion should not be construed as preventing the parties from putting on

-12-

additional evidence regarding the child custody issue on remand."). In the present case, upon remand, the trial court may, in its discretion, hear and consider additional evidence regarding the best interest of the child and the pertinent statutory factors.

**B.**

Mother argues that the trial court erred in changing the child's surname from Stephenson to Flynn. As we have recently observed,

> The standards for analyzing the propriety of changing a nonmarital child's surname are set forth in ***Barabas v. Rogers***:
>
>> The courts should not change a child's surname unless the change promotes the child's best interests. Among the criteria for determining whether changing a child's surname will be in the child's best interests are: (1) the child's preference, (2) the change's potential effect on the child's relationship with each parent[,] (3) the length of time the child has had its present surname, (4) the degree of community respect associated with the present and proposed surname, and (5) the difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname. The parent seeking to change the child's surname has the burden of proving that the change will further the child's best interests.
>
> ***Barabas v. Rogers***, 868 S.W.2d 283, 287 (Tenn. Ct. App. 1993).

***Howell v. Smithwick***, No. E2016-00628-COA-R3-CV, 2017 WL 438620, at *11-12 (Tenn. Ct. App., filed Feb. 1, 2017); *accord **Nelson v. Justice***, No. E2017-00895-COA-R3-CV, 2019 WL 337040, at *20 (Tenn. Ct. App., filed Jan. 25, 2019).

The following testimony from father is the entirety of the proof heard on the proposed name change:

Q. Okay. Why are you asking for your son's name to be changed?

A. Because my son is a Flynn. You can look at him and compare pictures to when I was a kid. My son is a . . . he's a Flynn. And I think that a child, as long as their father is there and wants to be a part of the child's life, I feel like the child should have the father's last name. I had no say-so in his first or middle name and I feel like he should have my last name.

Q. Anything else? Any other reasons why?

A. No. Just the fact that that's what, over time throughout all of . . . You know, you can go back as far as you want to and a child has carried their father's last name. Whether it be a male or a female child, they carry their father's last name. And that's just, you know, how I perceive it to be and how everybody really perceives it to be. Or the majority I will say. Not everybody obviously, but the majority. And I think my son should have my last name.

The trial court made no findings of fact regarding the factors recognized in **Barabas** and **Howell**. This Court has stated that "[t]he amount of proof required to obtain a name change is not insubstantial." **In re McKenzie Z.**, No. M2017-00484-COA-R3-JV, 2018 WL 1508574, at *7 (Tenn. Ct. App., filed Mar. 27, 2018) (citing **In re Joseph H.**, No. M2014–01765–COA–R3–JV, 2015 WL 5032066, at *5 (Tenn. Ct. App., filed Aug. 25, 2015)). Furthermore, "[a] father's mere preference or wish that a child share his surname is not enough." **Id.** (citing **Carroll v. Corcoran**, No. M2012–01101–COA–R3–CV, 2013 WL 2382292, at *6 (Tenn. Ct. App., filed May 29, 2013); **In re A.C.S.**, No. M2008–898–COA–R3–JV, 2009 WL 348510, at *3 (Tenn. Ct. App., filed Feb. 12, 2009); **Whited v. Fleenor**, No. E2002–01185–COA–R3–JV, 2003 WL 1092968, at *2 (Tenn. Ct. App., filed Mar. 13, 2003)).

In cases where the father has failed to meet this burden, we have reversed the trial court's decision to change the child's name. *See. e.g.*, **In re McKenzie Z.**, 2018 WL 1508574, at *7; **Howell**, 2017 WL 438620, at *12-13; **In re A.C.S.**, 2009 WL 348510, at *3; **Whited v. Fleenor**, 2003 WL 1092968, at *2. We reach a similar conclusion here. Father's tautological argument that the child's name should be changed to Flynn because "he is a Flynn" does not bear much weight. His testimony evinces only his personal preference, not that a name change is in the child's best interest. We reverse the trial court's decision to change the child's name.

**V.**

The trial court's judgment establishing a permanent parenting plan is vacated. Upon remand, the trial court is instructed to make sufficient findings of fact and conclusions of law, as required by Tenn. R. Civ. P. 52.01, in making its custody determination. The trial court's order changing the child's name is reversed. Costs on appeal are assessed equally between the appellant, Allan Bradley Flynn, and the appellee, Megan Marie Stephenson.

_____
CHARLES D. SUSANO, JR., JUDGE