IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 1, 2021

FILED
04/05/2022
Clerk of the
Appellate Courts

## BRUCE ANNE STEADMAN v. CHARLES DANIEL FARMER

**Appeal from the Chancery Court for Fentress County**
**No. 20-61    Elizabeth C. Asbury, Chancellor**

_____

**No. M2021-00484-COA-R3-CV**

_____

In this divorce case, Husband contests the trial court's division of marital property and debt and the award of alimony to Wife. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and W. NEAL MCBRAYER, JJ., joined.

Harold Eugene Deaton, Jamestown, Tennessee, for the appellant, Charles Daniel Farmer.

Melanie Stepp Lane, Jamestown, Tennessee, for the appellee, Bruce Anne Steadman.

## MEMORANDUM OPINION[1]

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff/Appellee Bruce Anne Steadman ("Wife") and Defendant/Appellant Charles Daniel Farmer ("Husband") were married for thirteen years. On July 24, 2020, Wife filed for divorce from Husband in the Chancery Court for Fentress County ("the trial court"). The parties sold their marital home and agreed for the proceeds to be deposited

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

with the court clerk while the divorce was pending. Wife amended her divorce complaint in January 2021, adding a request for alimony.

The final hearing in this case occurred via Zoom on February 17, 2021.[2] Husband and Wife testified. At the time of divorce, Wife was fifty-three years old, and Husband was sixty years old. Wife is disabled; she was diagnosed with cancer in 2017 and suffered a stroke in February 2020. Husband does not have health issues and works as a heavy equipment operator. Wife testified that she has not been employed since 2011; her monthly income is $2,399.00; and her sources of income are North Carolina State Retirement, Social Security Disability, and USA Life Private Policy. She further testified, *inter alia*, that Husband had earned approximately $30,000.00 per year for the past several years, including in 2019, when he worked most days. Wife filed an affidavit of income and expenses that she testified accurately reflected her income and expenses as of the day of trial, and testified that her monthly expenses are $3,225.88. The answers to interrogatories that she had provided Husband had showed monthly expenses of $1,950.88, but she alleged that by the time of trial her expenses had increased to $3,233.88[3] due to home health care and counseling costs. She testified that she needed home health care because she could not drive and do ordinary housekeeping because of her health issues; although she receives healthcare benefits through Medicare, those do not pay for in-home services. She further testified that she needs counseling to deal with the emotional struggles related to her cancer diagnosis[4] and Husband's alleged infidelity; according to Wife, she left the marital home when she discovered Husband was having an affair. Husband testified, *inter alia*, that he works only 130 days per year and earns $150.00 per day; his monthly expenses are $1,360.50; he feels no obligation to support Wife; and he resides with another woman, but has no sexual or romantic relationship with her. He also admitted to making $30,000.00 in 2019, and had no explanation for the decrease in his income after that.

The trial court filed a final decree of divorce on April 7, 2021. Therein, the trial court granted Wife a divorce from Husband pursuant to Tennessee Code Annotated section 36-4-129, "[b]y stipulation of the parties." The trial court also classified certain property as marital and other property as separate, distributed the parties' property and debt, and awarded Wife alimony in futuro in the amount of $850.00 per month. The trial court ordered that alimony for January, February, and March 2021, in the total amount of $2,550.00, was to be paid to Wife from the funds held in the court registry, and that beginning April 1, 2021, Husband was to begin paying the $850.00 per month. The trial court further ordered that $3,000.00 would be paid to counsel for Wife's attorney's fees out of the funds in the court registry, but otherwise the parties were responsible for their own attorney's fees. The trial court also ordered Husband to pay any unpaid court costs

---

[2] The record contains no transcript. However, the parties entered into an agreed Statement of the Evidence.

[3] It is unclear where the difference between $3,225.88 and $3,233.88 derives from.

[4] It appears that Wife's cancer diagnosis is terminal.

from his share of the funds in the court registry.[5]

On April 22, 2021, Wife filed a petition for civil contempt, averring that Husband had not paid the alimony he owed beginning April 1, 2021. She also sought damages from Husband in the form of the costs of the contempt petition and attorney's fees. On May 6, 2021, Husband filed a notice of appeal in this Court of the trial court's April 7, 2021 order. In an order filed June 25, 2021, the trial court found Husband in contempt for failure to pay Wife alimony. The trial court ordered disbursement of $3,400.00 of the funds from the court registry to Wife to cover alimony for April, May, June, and July 2021, to be deducted from the amount awarded to Husband in the final divorce decree. The trial court further ordered that if Husband failed to pay alimony in August and September 2021, he would be imprisoned. The trial court reserved the issue of attorney's fees on the contempt petition until this Court renders an opinion.

## II. Issues Presented

Husband raises the following issues, taken from his brief:

I. Whether the [trial] court abused its discretion by awarding [Wife] the majority of the marital funds in the division of marital property.

II. Whether the [trial] court abused its discretion by awarding [Wife] alimony in futuro.

Wife raises the following issues, taken from her brief:

I. Whether the trial court erred in dividing the marital estate.

II. Whether the trial court erred in awarding alimony to [Wife].

III. Whether [Wife] is entitled to attorney's fees incurred in this appeal.

## V. Discussion

### A.

Husband takes issue with how the trial court divided the marital property and debt, while Wife argues the division was equitable. This Court has explained that

[p]roperty classification issues are issues of fact. *Luplow v. Luplow*, 450 S.W.3d 105, 109 (Tenn. Ct. App. 2014). "Once property has been classified

---

[5] Further specifics of the trial court's order will be discussed as relevant, *infra*.

as marital property, the court should place a reasonable value on property that is subject to division." *Id.* (citing *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003)). After this valuation, the trial court is to divide the marital property in an equitable manner considering the statutory factors listed in Tennessee Code Annotated section 36-4-121(c). *Id.* at 109-110. "The equitable division of marital property is a fact-intensive inquiry involving the careful weighing of the relevant statutory factors." *Brainerd v. Brainerd*, No. M2015-00362-COA-R3-CV, 2016 WL 6996365, at *5 (Tenn. Ct. App. Nov. 30, 2016) (no perm. app. filed). The trial court has broad discretion in fashioning an equitable distribution of marital property, and an appellate court will defer to the trial court's distribution unless it is inconsistent with the statutory factors or lacks proper evidentiary support. *Baggett v. Baggett*, 422 S.W.3d 537, 543 (Tenn. Ct. App. 2013).

*Kanski v. Kanski*, No. M2017-01913-COA-R3-CV, 2018 WL 5435402, at *5 (Tenn. Ct. App. Oct. 29, 2018).

Further, Rule 7 of the Rules of the Court of Appeals of Tennessee states, in relevant part, as follows:

(a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

(b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

"We previously have held that 'where an appellant fails to comply with [Rule 7], that appellant waives all such issues relating to the rule's requirements.'" *Kanski*, 2018 WL 5435402, at *6 (quoting *Stock v. Stock,* No. W2005-02634-COA-R3-CV, 2006 WL 3804420, at *5, n.3 (Tenn. Ct. App. Dec. 28, 2006)). This Court has previously explained the importance of the requirements of Rule 7 as follows:

[I]t is essential that the parties comply with Rule 7 in order to aid this Court in reviewing the trial court's decision. The table required by Rule 7, allows

- 4 -

this Court to easily and correctly determine the valuation and distribution of the marital estate as ordered by the trial court. Further, the Rule 7 table, allows this Court to ascertain the contentions of each party as to the correct valuations and proper distribution, as well as the evidence in the record which the party believes supports its contention. Consequently, a table, in full compliance with Rule 7, is vital as this Court must consider the *entire* distribution of property in order to determine whether the trial court erred. Moreover, this Court is under no duty to minutely search the record for evidence that the trial court's valuations may be incorrect or that the distribution may be improper.

*Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010) (citations omitted).

Here, Appellant did not include such a table in his appellate brief. While this Court "may suspend the requirements of Rule 7 for 'good cause,'" *Hopwood v. Hopwood*, No. M2015-01010-COA-R3-CV, 2016 WL 3537467, at *7 (Tenn. Ct. App. June 23, 2016) (quoting Tenn. R. Ct. App. 1(b)), we find no such cause in this case. Therefore, Husband has waived any issues regarding the classification, valuation, and division of the marital property and debt. The trial court's order on these matters is affirmed.

**B.**

We next address the trial court's award of alimony. "Trial courts are afforded broad discretion in decisions regarding the nature, duration, and amount of alimony; therefore, but for an abuse of discretion, the trial court's award of alimony will normally be upheld on appeal." *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *4 (Tenn. Ct. App. Oct. 24, 2012). "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 107 (Tenn. 2011).

There are four types of alimony: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. *Gonsewski*, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(d)(1)). The type of alimony the trial court awarded here, alimony in futuro, is a form of long-term support appropriate where one spouse is economically disadvantaged relative to the other and

the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

*Id.* at 107–08 (citations omitted). Tennessee's legislature has expressed a preference for short-term over long-term spousal support. *See **Wills v. Wills***, No. M2015-01639-COA-R3-CV, 2016 WL 2937358, at *4 (Tenn. Ct. App. May 16, 2016) (citing ***Gonsewski***, 350 S.W.3d at 109).

"In determining whether to award spousal support and, if so, determining the nature, amount, length, and manner of payment, courts consider several factors." ***Gonsewski***, 350 S.W.3d at 109–10. These factors are outlined in Tennessee Code Annotated section 36-5-121(i):

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
> (3) The duration of the marriage;
>
> (4) The age and mental condition of each party;
>
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
>
> (7) The separate assets of each party, both real and personal, tangible and intangible;
>
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
>
> (9) The standard of living of the parties established during the marriage;
>
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

"Although each of these factors must be considered when relevant to the parties' circumstances, 'the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay.'" **Gonsewski**, 350 S.W.3d at 110 (citations omitted). "Of these two factors, 'the primary consideration is the disadvantaged spouse's need.'" **Henry v. Henry**, No. M2019-01029-COA-R3-CV, 2020 WL 919248, at *6 (Tenn. Ct. App. Feb. 26, 2020) (citation omitted).

The portion of the trial court's order regarding alimony states, in pertinent part, as follows:

1. [Wife's] monthly income is $2,399.00. Her monthly living expenses are between $1,950.88 and $3225.88. [Wife] is disabled and is not capable of earning funds in addition to these amounts.

2. [Husband's] 2019 income was approximately $30,000.00. [Husband] claims that his 2020 income was $20,000.00. If he earns $150.00 per day for 130 days per year as he claims, his gross annual income would be $19,500.00. [Husband] is able bodied and capable of gainful employment. His testimony regarding his income earning ability was suspect. He had no documentation to support his testimony as to income. This Court does determine that Husband is capable of earning $30,000.00 per year.

3. A significant difference in the monthly living expenses as set forth by [Wife] on [her affidavit of income and expenses] and [her answers to interrogatories] are her claim of $1,083.00 for caregiving services. There is no dispute that she is a disabled individual with terminal cancer. [Wife] does receive healthcare benefits through Medicare but in home services are not provided.

4. This is a 13 year marriage.

5. That [Husband] is the only spouse able to earn income through employment.

6. That the Court has made every effort to make an approximate equal division of the parties' assets and debts.

7. [Wife's] condition is not likely to improve.

8. [Wife] has significant need at this time to provide for her due to her deteriorating health condition.

9. That [Husband] is the at fault party in this case.

10. That based on the foregoing analysis, [Husband] shall pay to [Wife] the sum of $850.00 per month as alimony in futuro. This obligation shall terminate upon the death or remarriage of [Wife]. Further, [Wife] is authorized to maintain the life insurance policy currently in effect on [Husband's] life with [Wife] as the beneficiary if she chooses to do so[.]

(Internal citations omitted).

Husband contests the alimony award. Wife argues that Husband is capable of paying the amount of alimony awarded because his income ($2,500.00 per month) minus his expenses ($1,360.50 per month) leaves him with $1,139.50 in excess income per month. Thus, she argues, Husband would be left with $290.00 of discretionary income each month after paying the alimony as ordered ($1,139.50 minus $850.00 in alimony leaves $289.50). Husband argues, *inter alia*, that neither spouse is disadvantaged and takes issue with specific factors under 36-5-121(i).

As Wife points out, there are several deficiencies in Husband's appellate brief, including that he does not support many of his assertions with citations to the record or appropriate legal authority. *See generally* Tenn. R. App. P. 27. We will do our best to deal with the properly supported assertions in his brief and other issues that require addressing based upon how the trial court handled them.

Husband argues that under factor one in section 36-5-121(i), regarding each party's capacities and needs, the parties have roughly equal income (his is $2,500.00 per month and Wife's is $2,399.00), and his monthly expenses of $1,360.50 do not include at least some of the debts apportioned to him by the trial court. He also appears to take issue with the fact that Wife originally averred that her monthly expenses were $1,950.00, but on the day of the final hearing added an additional $1,283.00 per month for home care and counseling.

The trial court does not explicitly address Husband's ability to pay alimony at all in its order, even though that is one of the two most important factors to consider in awarding alimony. *See **Gonsewski***, 350 S.W.3d at 110; *see also* Tenn. R. Civ. P. 52.01 (requiring trial courts to make findings of fact and conclusions of law following bench trials); ***Gooding v. Gooding***, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) ("The underlying

- 8 -

rationale for [Rule 52.01's] mandate is that it facilitates appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision," and, "in the absence of findings of fact and conclusions of law, this court is left to wonder on what basis the court reached its ultimate decision."). Indeed, Husband's ability to pay is particularly at issue here because the proof shows that the parties in this case live off of modest incomes and are not accustomed to an extravagant marital standard of living. In fact, Wife even had to sell some of the parties' personal property before the divorce in order to pay bills. The trial court's order, however, did not discuss the marital standard of living or how it affects Husband's ability to pay. *See also* 36-5-121(i)(9).

Still, if correct, Wife's calculation that Husband would have approximately $290.00 left every month after paying alimony could support a finding that Husband has the ability to pay alimony. In an effort to show that he does not have the surplus as calculated by Wife, Husband asserts in his brief that his expenses, which he testified at trial total $1,360.50, do not include the monthly debt service that he will be required to pay as a result of the trial court's division of marital debt. We agree that such considerations are relevant in determining Husband's ability to pay. The problem with Husband's argument, however, is that it cannot be confirmed by reference to the evidence in the record. Specifically, Husband's brief provides no citations to the evidence where we may determine whether Husband's $1,360.50 in expenses includes any debt service. This failure to include references to the record is not altogether surprising because our review of the record indicates that no such evidence exists. Instead, the joint Statement of the Evidence submitted by the parties states only the total figure that Husband contends he is obligated to pay in expenses each month; he does not break this figure down into discreet expenses. Moreover, the existence of this debt, and the fact that one of the parties would be required to pay it, could not have come as a surprise to Husband. Thus, he provides no evidentiary support for his assertion that the total expenses that he himself testified to should not be used in determining his ability to pay. Granted, the trial court should have been more explicit in addressing Husband's ability to pay alimony. *See **Gooding***, 477 S.W.3d at 782 (citing Tenn. R. Civ. P. 52.01). But it is Husband's burden to show that the trial court clearly erred in its assessment of evidence, and he has simply failed to show an error in the trial court's implicit determination that he has the ability to pay support in this case, notwithstanding the debt he was ordered to pay as a result of the divorce.

With regard to ability to pay, Husband also argues that he will reach retirement age in three to five years, his retirement income will likely be about one-third to one-half of his current income, and it will be impossible for him to pay the alimony as ordered. Again, however, he does not cite to the record to support this contention. Moreover, Husband's argument is based on future events, not current circumstances. Tennessee law provides that "[a]n award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). Moreover, "when an obligor's retirement is objectively reasonable, it

does constitute a substantial and material change in circumstances—irrespective of whether the retirement was foreseeable or voluntary—so as to permit modification of the support obligation." ***Bogan v. Bogan***, 60 S.W.3d 721, 729 (Tenn. 2001). Thus, if and when Husband retires, he will be entitled to seek modification of his obligation, provided he meets the above requirements. Husband has therefore failed to demonstrate that he currently lacks the ability to pay support.[6]

Moreover, we agree that the exact extent of Wife's need for alimony is somewhat unclear. The trial court found that Wife's monthly expenses range widely, from $1,950.88 to $3,225.88.[7] Yet, the trial court appears to have also credited Wife's claim that she needs $1,083.00 per month for home care. Thus, the only lack of clarity concerns Wife's testimony that she needs an additional $200.00 per month for counseling. Despite this lack of clarity, Husband does not cite to any authority that would disallow Wife from increasing her claimed expenses between discovery and trial, and does not indicate that he objected to Wife's new figure in the trial court. Nor does he argue that the additional expenses she claimed are unreasonable. Therefore, we are not persuaded that the trial court erred in apparently deciding that Wife's expenses fall on the higher end of the range between $1,950.88 to $3,225.88. Consequently, Wife's need is clear: she has income of $2,399.00 per month, and expenses of, or near, $3,225.88, leaving a significant deficit. Thus, Husband has failed to demonstrate that Wife is not economically disadvantaged compared to him.

Under factors seven and eight of section 36-5-121(i), Husband takes issue with the parties' separate assets and the provisions made with respect to the marital property. Husband argues that Wife received more of the funds from the sale of the marital home than he did, and the personal property he received is unlikely to have the same value as the funds she received. He also claims that the trial court made an inequitable division of the marital property, thus creating an unjust ruling and abusing its discretion. Wife, on the other hand, argues that Husband was allocated property of greater value than she was. Finally, the trial court stated in its order that it made an approximately equal division of the parties' assets. It is somewhat perplexing that Wife, Husband, and the trial court all have different perceptions of how the marital property was actually distributed. But because Husband did not provide us a Rule 7 table, we will not disturb the trial court's valuation and division of the marital property, and Husband waived his right to argue that such valuation and division was erroneous, as explained *supra*. And Husband again

---

[6] Husband makes a similar argument with respect to factor four under section 36-5-121(i), regarding the age and mental condition of each party. He claims that each party has normal mental faculties, he will likely begin drawing social security in five years, and he has no other retirement or pension. He further argues that Wife's disability and retirement income of $2,399.00 is significantly more than he will draw in social security. However, he again does not cite to the record to support these contentions, and thus we are unable to efficiently evaluate whether they have any merit.

[7] This range appears to derive from the fact that, as the trial court found, Wife's interrogatory responses set forth her monthly expenses as $1,950.88, but her later affidavit of income and expenses included the following additional expenses: $1,083.00 for home care and $200.00 for counseling.

generally fails to point to *evidence* in the record to support his assertion that the property division was inequitable. Therefore, we will take the trial court at its word that the division of property was approximately equal. Consequently, we are not persuaded by Husband's argument that Wife received more property.

As to factor eleven of section 36-5-121(i), regarding the relative fault of the parties, Husband takes issue with the trial court's finding that he was at fault when the parties stipulated to grounds for divorce pursuant to Tennessee Code Annotated section 36-4-129.[8] We agree that the trial court's finding on this factor is somewhat confusing. In granting the divorce, the trial court stated, "By stipulation of the parties, [Appellant] is awarded an absolute divorce from [Appellee] pursuant to T.C.A. § 36-4-129." Thus, the trial court's order impliedly grants Wife the divorce as the "less at fault party," *see* § 36-4-129(b), but without explanation as to Husband's fault. Husband appears to have consistently denied Wife's allegation of infidelity, and it is unclear what grounds for divorce, if any, the parties stipulated to. However, Wife testified that Husband committed adultery, and Husband testified that he did not. To the extent that the trial court made a credibility finding favoring Wife on this issue, we generally defer to that. *See* **Sircy v. Metro. Gov't of Nashville & Davidson Cty.**, 182 S.W.3d 815, 818 (Tenn. Ct. App. 2005) (citation omitted) ("Where the trial court's factual conclusions rest on the evaluation of a witness's credibility, we will not re-evaluate that assessment of witness credibility absent clear and convincing evidence to the contrary."). Thus, while again, the trial court could have better explained how it arrived at the conclusion that Husband was at fault, *see* **Gooding**, 477 S.W.3d at 782 (citing Tenn. R. Civ. P. 52.01), we are not persuaded that the trial court committed reversible error in finding Husband at fault for the demise of the marriage for purposes of alimony.

Husband also argues that alimony in futuro was inappropriate here, and transitional alimony in the form of the proceeds that Wife received from the sale of the marital home would have been more appropriate. While this marriage lasted only thirteen years, it is also undisputed that Wife has a serious illness and cannot work. Therefore, and in light of our above discussion, we cannot say that the trial court abused its discretion in deciding to award alimony in futuro, as opposed to short-term spousal support. *See, e.g.*, **Price v. Price**, No. M2005-02704-COA-R3-CV, 2007 WL 1555828, at *9 (Tenn. Ct. App. May 29, 2007) (footnote omitted) ("When we consider the evidence in this case, particularly Wife's

---

[8] Section 36-4-129 states as follows:

(a) In all actions for divorce from the bonds of matrimony or legal separation the parties may stipulate as to grounds and/or defenses.

(b) The court may, upon stipulation to or proof of any ground of divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce or if a divorce is to be granted on the grounds of irreconcilable differences, declare the parties to be divorced, rather than awarding a divorce to either party alone.

diagnosis of brain cancer and her poor prognosis together with her economic circumstances, we reach the inescapable conclusion that Wife is in need of alimony 'on a long term basis.' Hence, we conclude that the trial court erred when it awarded Wife transitional alimony as opposed to alimony in futuro."). Thus, the trial court's award of alimony is affirmed.

As for the trial court's award of attorney's fees to Wife, "[i]t is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido." ***Gonsewski***, 350 S.W.3d at 113 (citations omitted). Therefore, the trial court's award of $3,000.00 in attorney's fees to Wife out of the proceeds from the sale of the marital home constitutes an award of alimony in solido, although not expressly designated as such by the trial court. Here, the above analysis demonstrates that the trial court considered the appropriate factors in deciding to award Wife alimony in futuro and that Husband has not shown an abuse of discretion in that decision. For the same reasons, we also affirm the award of attorney's fees as alimony in solido.

## C.

Finally, Wife seeks an award of attorney's fees on appeal on two bases. First, she appears to argue that she is entitled to appellate attorney's fees pursuant to Tennessee Code Annotated section 36-5-121(d)(5), which states that "[a]limony in solido may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Second, she argues that she is entitled to attorney's fees on appeal pursuant to section 27-1-122, which states:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Wife bases her request for frivolous appeal damages on the deficiencies in Husband's brief.

"An award of appellate attorney's fees is a matter within this Court's sound discretion." ***Moran v. Willensky***, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010). "In considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case." ***Id.*** (citation omitted). In light of the parties' relatively low incomes and our decision to affirm Husband's alimony obligation, we exercise our discretion to respectfully decline to award Wife appellate attorney's fees.

## V. CONCLUSION

The judgment of the Chancery Court for Fentress County is affirmed. This cause is remanded for further proceedings consistent with this Opinion. Costs of this appeal are assessed to Appellant Charles Daniel Farmer, for which execution may issue if necessary.


s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE