Timothy Joshua GOODING

v.

Jessika Ann GOODING

Court of Appeals of Tennessee,
AT NASHVILLE.

March 25, 2015 Session

Filed April 29, 2015

Daniel H. Rader, IV, Cookeville, Tennessee, for the appellant, Timothy Joshua Gooding.

Brett A. York and Tiffany S. Lyon, Crossville, Tennessee, for the appellee, Jessika Ann Gooding.

## OPINION

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which RICHARD H. DINKINS, J., and W. NEAL McBRAYER, J. joined.

Father appeals the parenting schedule contending it is not supported by the evidence and that the trial court erred by implicitly basing the parenting schedule on an erroneous legal standard, the tender years doctrine. Decisions concerning parenting plans are reviewed based on the deferential abuse of discretion standard. Nevertheless, discretionary decisions must be based on the applicable law and the relevant facts; accordingly, they are not immune from meaningful appellate review. In all actions tried upon the facts without a jury, the trial court is required, pursuant to Tenn. R. Civ. P. 52.01, to find the facts specially, state separately its conclusions of law, and enter judgment accordingly. The underlying rationale for this mandate is that it facilitates appellate review by affording a clear understanding of the basis of the trial court's decision; in the absence of findings of fact and conclusions of law, this court is left to wonder on what basis the court reached its ultimate decision. When a trial court fails to comply with Rule 52.01, the appellate court cannot determine whether the trial court applied the correct legal standard or what reasoning it employed. In such circumstances, the appellate court is not required to review the discretionary decision with deference. In this case, the trial court established a parenting schedule without identifying the legal principles it applied or the factual basis for its decision; therefore, it failed to satisfy the Rule 52.01 mandate. Having no way of knowing the reasoning for the trial court's decision, we conducted a de novo review of the record to determine where the preponderance of the evidence lies and found no factual or legal basis for the disparity in parenting time afforded the parents. Accordingly, we reverse the parenting schedule and remand with instructions for the trial court to establish a parenting schedule consistent with the statutory aspiration to maximize each parent's participation in the life of the child based on all relevant facts and circumstances. Further, the court is to identify the factual and legal basis upon which the new parenting schedule is based as Tenn. R. Civ. P. 52.01 requires.

Timothy Joshua Gooding ("Father") and Jessika Ann Gooding ("Mother") are the parents of one child, a son, born in June 2013. Father filed for divorce on August 5, 2013. The trial court established a temporary parenting plan on August 22, 2013; the child was two months old at the time. The initial plan was modified on December 3, 2013, to extend Father's parenting time and to set Father's child support obligation at $259 per month. On May 23, 2014, the trial court established a third temporary parenting plan that gave Father parenting time every other weekend and three hours every other Tuesday; the plan also established holiday and vacation parenting time.

The case was tried on June 26, 2014; the child was one year old at the time of trial. Father testified, but Mother did not. Father's mother was present and prepared to be called as a witness, but the parties stipulated that she would "corroborate what Father has testified to and that he is good with the child and loves his child." Father proposed a parenting plan for the child that called for equal parenting time year-round, with each parent having the

child on alternating weeks. Although Mother did not testify, her counsel recommended the adoption of the existing temporary parenting plan. At the conclusion of the trial, the court issued an oral ruling that adopted the existing temporary plan.

The court entered its order on July 22, 2014. Neither the order nor the oral ruling contained any findings of fact. The court declared the parties divorced under Tenn.Code Ann. § 36–4–129. With respect to the parenting plan, which is the only issue on appeal, the court adopted the terms of the May 23, 2014 temporary plan but granted Father additional parenting time during the summer of 2014. The order further provided that, beginning in September 2014, Mother would have the majority of the parenting time with Father having parenting time on three weekends each month and a three-hour visitation on Tuesdays. Additionally, starting in the summer of 2015, Father was granted equal parenting time by alternating weeks with Mother for the duration of the summer break of Morgan County Schools. Father's child support obligation remained $259 per month.

 In this appeal, Father challenges the parenting schedule ordered by the court. He contends the parenting schedule was not supported by any evidence and that the trial court erred by implicitly basing the disparate parenting schedule on the tender years doctrine.[1] Specifically, he argues that because the child is not in school there is no justification for awarding different amounts of parenting time in the summer and school year. He further contends that year-round equal parenting time is in the best interest of the parties' one-year-old child.[2] The specific issues raised by Father read as follows:

1. Whether the Trial Court erred in adopting a parenting schedule that gives the Father only limited periodic weekends for visitation of his child (born June 17, 2013); and whether the Court should have instead ordered a shared co-equal parenting arrangement and schedule of every alternate week, year-round, where the only evidence presented at trial was presented by Father demonstrating that the best interests of the child required an equal parenting schedule in accordance with the factors in Tenn.Code Ann. § 36–6–106, and where Mother chose not to testify or offer any evidence on her own behalf at all.

2. Whether the Trial Court implicitly found that the child's best interests warranted a shared co-equal parenting schedule during summers, with no basis or explanation for failing to order the same shared co-equal parenting schedule year round, where the child is not in school and no other factor preponderates against a year-round schedule.

3. Whether the Trial Court improperly applied the tender years doctrine, or otherwise placed an improper burden on Father, by operating from an apparent presumption that fathers

---

1. The tender years doctrine is a presumption that young children should remain in their mother's custody. *See Bah v. Bah,* 668 S.W.2d 663, 666 (Tenn.Ct.App.1983); *Weaver v. Weaver,* 37 Tenn.App. 195, 261 S.W.2d 145, 148 (1953). Tennessee law no longer recognizes this presumption, and use of it is error. *Kelly v. Kelly,* 445 S.W.3d 685, 695 (Tenn. 2014); *see* Tenn.Code Ann. § 36–6–101(d) ("It

is the legislative intent that the gender of the party seeking custody shall not give rise to a presumption of parental fitness or cause a presumption or constitute a factor in favor or against the award of custody to such party.").

2. As of the filing of this opinion the child will be twenty-two months old.

should have only a limited weekend visitation schedule that was not supported by any evidence, and where the only evidence presented at trial was the evidence presented by Father, and where Mother chose not to testify or offer any evidence on her own behalf at all.

4. Whether the trial court erred by failing to calculate child support in accordance with the actual visitation schedule, and whether the child support obligation should be modified to reflect a shared co-equal parenting schedule proposed by Father.

### ANALYSIS

#### I. PARENTING PLANS AND SCHEDULES

The General Assembly has established the aspirational goal for the courts to craft custody arrangements that permit both parents to "enjoy the maximum participation possible in the life of the child" consistent with the appropriate factors and circumstances. Tenn.Code Ann. § 36–6–106(a). Still, the details of parenting plans remain "peculiarly within the broad discretion of the trial judge." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn.2014) (citing *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn.2013)). Furthermore, "[i]t is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Id.* (quoting *Armbrister*, 414 S.W.3d at 693). This is because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, and trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Id.* (citing *Armbrister*, 414 S.W.3d at 693). Accordingly, a trial court's decision regarding the details of a parenting schedule should not be reversed absent an abuse of discretion. *Id.*; *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn.2001).

#### II. THE ABUSE OF DISCRETION STANDARD OF REVIEW

Father's challenge to the parenting schedule combined with the trial court's failure to make findings of fact, as required by Tenn. R. Civ. P. 52.01, present a perplexing and, unfortunately, often occurring challenge for this court to review the parenting schedule pursuant to the deferential abuse of discretion standard of review. When the trial court does not find the facts specially or state separately its conclusions of law, we are left to wonder as to the factors employed in crafting the parenting schedule, and it inevitably leads to decisions delaying the resolution of issues on appeal and prolonging the uncertainty of the children's residency.

Because of the foregoing concerns, we find it appropriate to begin with a review of the rationale for the deferential abuse of discretion standard of review, its evolution since 1931 when it was first adopted in Tennessee, and the effect the 1999 amendment to Tenn. R. Civ. P. 52.01 has on the abuse of discretion standard of review when the rule is not complied with, in whole or in part.

In 1988, this court conducted an in-depth analysis of the abuse of discretion standard of review because, since its adoption in 1931, the standard had become "muddied and imprecise with the passage of time," and courts were generally content to fall back on the deferential standard "to shore up verdict-salvaging opinions" or "to avoid close analysis of hard problems." *BIF, a Div. of Gen. Signals Controls, Inc. v. Serv. Const. Co., Inc.*, No. 87–136–II, 1988 WL 72409, at *2 (Tenn.Ct.

App. Jul. 13, 1988) (quoting Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above,* 22 Syracuse L.Rev. 635, 667 (1971)). In *BIF,* we explained:

> Our understanding of the nature of judicial discretion and of what constitutes an abuse of discretion has not advanced much during the thirty years since Chief Justice Burnett borrowed the United States Supreme Court's definition of the standard contained in *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931). In a criminal case decided in 1959, and later, in a 1961 civil case, Justice Burnett posed the question "What is meant by discretion?" He gave similar answers in each case, stating:
>
> > We think that it means a sound discretion, exercised, not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances of the law, and directed by the Chancellor's reason and conscience to a just result.
>
> *Southern Ry. v. Atlantic Coast Line R.R.,* 209 Tenn. 177, 183, 352 S.W.2d 217, 219 (1961); *Ivey v. State,* 207 Tenn. 438, 443–44, 340 S.W.2d 907, 909 (1959). Other than these cases and the ones following them, our published opinions state only that judicial discretion connotes "conscientious judgment, not arbitrary action," *Jenkins v. State,* 496 S.W.2d 521, 523 (Tenn.Crim.App.1973), and that a court abuses its discretion when it "acts contrary to uncontradicted substantial evidence and ignores all valid criteria." *State v. Windhorst,* 635 S.W.2d 706, 708 (Tenn.Crim.App.1982). Trial courts' adjudicative decision-making is never completely shielded from appellate review. *See Knaffl v. Knoxville Banking & Trust Co.,* 139 Tenn. 240, 244, 201 S.W. 775, 776 (1918). However, the abuse of discretion standard is a "review constraining concept" implying less intense appellate review and, therefore, less likelihood of reversal. Louis, *Allocating Adjudicative Decision Making Authority Between the Trial and Appellate Levels: A Unified View of the Scope of Review, the Judge/Jury Question, and Procedural Discretion,* 64 N.C.L.Rev. 993, 1045–46 (1986); Rosenberg, *supra,* at 637.

The standard conveys two notions. First, it indicates that the trial court has the authority to choose among several legally permissible, sometimes even conflicting, answers. Louis, *supra,* at 1038–39; *Southern Fire & Cas. Co. v. Cooper,* 200 Tenn. 283, 286, 292 S.W.2d 177, 178 (1956) (a trial court's discretion is "very wide"). Second, it indicates that the appellate court will not interfere with the trial court's decision simply because it did not choose the alternative the appellate court would have chosen. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985).

Appellate courts have the task of articulating the boundaries of the permissible range of the trial court's options. When the courts refer to an abuse of discretion, "[t]hey are simply saying that either the discretion reposed in the lower court judge was not exercised in conformity with applicable guidelines or the decision was plainly against the logic and effect of the facts before the court." Waltz, *supra,* at 1104.

Discretionary decisions must take applicable legal principles into account. If the trial court misconstrues or misapplies the law, its discretion lacks the necessary legal foundation and becomes an abuse of discretion. *Title Guar. Escrow Serv., Inc. v. Powley,* 2 Haw.App. 265, 630 P.2d 642, 645 (1981); *In re Presentment of Bergen County Grand Jury,* 193 N.J.Super. 2, 471 A.2d 1203,

1207 (1984); *Stewart v. Floyd*, 274 S.C. 437, 265 S.E.2d 254, 255 (1980); *Earl v. Gulf & Western Mfg. Co.*, 123 Wis.2d 200, 366 N.W.2d 160, 163 (Ct.App.1985). Accordingly, "abuse of discretion" may connote an error of law, an error of fact, or an error in the substance or form of the trial court's order. *Coca–Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 315 (2d Cir.1982).

Appellate courts' deference to trial courts' "discretionary" decisions should not promote result-oriented opinions or seemingly irreconcilable precedents. The law's need for consistency, predictability, and reliability requires the elimination of apparently whimsical authority on both the trial and appellate levels. *In order to ensure a rational standard of review, a trial court's discretionary decisions should be reviewed to determine: (1) whether the factual basis of the decision is supported by sufficient evidence; (2) whether the trial court has correctly identified and properly applied the applicable legal principles; and (3) whether the trial court's decision is within the range of acceptable alternatives.*

*Id.* 1988 WL 72409, at *2–3 (emphasis added).

The three-part analysis stated immediately above was subsequently applied to review a trial court's discretionary decision to deny a motion for medical examination of a party under Tenn. R. Civ. P. 35. *Wilkinson v. Wilkinson*, No. 01A01–9808–CV–00446, 1999 WL 969698, at *4–5 (Tenn. Ct.App. Oct. 26, 1999). Later, it was employed to review a variety of discretionary decisions. *See Flautt & Mann v. Council of City of Memphis*, 285 S.W.3d 856, 871–73 (Tenn.Ct.App.2008) (in which the court emphasized the importance of the three-part analysis when reviewing a finding of contempt); *State ex rel. Flowers v. Tenn.*

*Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 602, 610 (Tenn.Ct.App.2006) (finding of contempt); *Helderman v. Smolin*, 179 S.W.3d 493, 500–01 (Tenn.Ct.App.2005) (decision to strike portions of an expert's affidavit); *JWT, L.P. v. Printers Press, Inc.*, No. M2001–02590–COA–R3–CV, 2002 WL 31397317, at *10–11 (Tenn.Ct.App. Oct. 24, 2002) (denial of motion for discretionary costs); *Mays v. Mays*, No. W2000–03067–COA–R3–CV, 2002 WL 1751333, at *8–9 (Tenn.Ct.App. Feb. 5, 2002) (award of attorney's fees); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222–23 (Tenn.Ct. App.1999) (decision to exclude evidence).

This analysis was first referenced in a domestic case in 2000 in *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn.Ct.App.2000), wherein the court analyzed the issue of child support. Two years later, the three-part analysis was cited in the analysis of a trial court's decisions regarding child custody and alimony. *Williams v. Williams*, No. W2001–00101–COA–R3–CV, 2002 WL 1349517, at *2 (Tenn. Ct.App. June 20, 2002). Subsequently, this court has utilized the three-part analysis in domestic law cases involving both child support and alimony. *See Johnson v. Johnson*, No. M2008–00236–COA–R3–CV, 2009 WL 890893, at *3 (Tenn.Ct.App. Apr. 2, 2009) (child support); *Kelley v. Kelley*, No. M2004–01202–COA–R3–CV, 2005 WL 2240964, at *2–3 (Tenn.Ct.App. Sept. 15, 2005) (child support); *Troglen v. Troglen*, No. E2004–00912–COA–R3–CV, 2005 WL 990567, at *3–4 (Tenn.Ct.App. Apr. 28, 2005) (child support); *Downing v. Downing*, No. W2003–00561–COA–R3–CV, 2004 WL 1196100, at *3 (Tenn.Ct.App. May 27, 2004) (child support); *Halkiades v. Halkiades*, No. W2004–00226–COA–R3–CV, 2004 WL 3021092, at *3 (Tenn.Ct.App. Dec. 29, 2004) (alimony); *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn.Ct.App. 2002); *Grice v. Grice*, No. M2001–02105–

COA–R3–CV, 2002 WL 31558103, at *3 (Tenn.Ct.App. Nov. 20, 2002) (alimony).

 This three-part analysis clearly indicates that the factual basis of a trial court's discretionary decision must be supported by "sufficient evidence," yet it does not identify what constitutes "sufficient evidence." *See BIF*, 1988 WL 72409, at *3. Fortunately, in 2010 our Supreme Court provided additional guidance on the subject of "sufficient evidence" as it explained why discretionary decisions must take the applicable law and the relevant facts into account:

> The abuse of discretion standard of review envisions a less rigorous review of the [trial] court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the court below, or to substitute their discretion for the [trial] court's. The abuse of discretion standard of review does not, however, immunize a [trial] court's decision from any meaningful appellate scrutiny.
>
> *Discretionary decisions must take the applicable law and the relevant facts into account.* An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a

clearly erroneous assessment of the evidence.

To avoid result-oriented decisions or seemingly irreconcilable precedents, *reviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions.* When called upon to review a [trial] court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R.App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524–25 (Tenn.2010) (internal citations omitted) (emphasis added).[3]

Finding that the foregoing explanation of the three-part analysis provides a practical guide for reviewing an appellant's challenge of a discretionary decision, we turn our attention to how the trial court's compliance or noncompliance with the mandate in Tenn. R.App. P. 52.01 may affect the deferential standard.

### III. RULE 52.01 OF THE TENNESSEE RULES OF CIVIL PROCEDURE

Effective July 1, 2009, Rule 52.01 was amended to read as follows:

> *In all actions tried upon the facts without a jury, the court shall find the facts*

---

**3.** This analysis was consistent with a prior decision of this court. *See Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn.Ct. App.2002) ("When called upon to review a discretionary decision, we will review the trial court's underlying factual findings using the preponderance of the evidence standard in Tenn. R.App. P. 13(d).").

*specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment . . . .* If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

(Emphasis added).[4]

The underlying rationale for this mandate is that it facilitates appellate review by "affording a reviewing court a clear understanding of the basis of a trial court's decision," and in the absence of findings of fact and conclusions of law, "this court is left to wonder on what basis the court reached its ultimate decision." *In re Estate of Oakley,* No. M2014–00341–COA–R3–CV, 2015 WL 572747, at *10 (Tenn.Ct. App. Feb. 10, 2015) (quoting *Lovlace v. Copley,* 418 S.W.3d 1, 35 (Tenn.2013)). Moreover, findings of fact that are both sufficient and supported by the record "enhance the authority of the trial court's decision by providing an explanation of the court's reasoning." *In re Zaylen R.,* No. M2003–00367–COA–R3–JV, 2005 WL 2384703, at *2 (Tenn.Ct.App. Sept. 27, 2005).

▆▆▆▆ While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *In re Estate of Oakley,* 2015 WL 572747, at *11 (quoting *Lovlace,* 418 S.W.3d at 35). Thus, "[s]imply stating the trial court's decision, without more,

does not fulfill [the Rule 52.01] mandate." *Barnes v. Barnes,* No. M2011–01824–COA–R3–CV, 2012 WL 5266382, at *8 (Tenn.Ct.App. Oct. 24, 2012). Conversely, when the trial court does not make specific findings of fact, no presumption of correctness arises because "there was nothing found as a fact which we may presume correct." *Brooks v. Brooks,* 992 S.W.2d 403, 405 (Tenn.1999).

Because "discretionary decisions must take the applicable law and the relevant facts into account," *Lee Med., Inc.,* 312 S.W.3d at 524, our deference to a trial court's discretionary decision for which Rule 52.01 compliance is required[5] may abate when the record does not reveal which legal principles and facts the trial court relied upon in making its decision. The effect of the trial judge failing to identify the reasoning underlying a discretionary decision was addressed in a recent decision by this court involving a challenge to a parenting plan:

> [W]e cannot determine whether the trial court applied an incorrect legal standard or relied on reasoning that caused an injustice because we do not know what legal standard the court applied, or what reasoning it employed. *See Halliday v. Halliday,* No. M2011–01892–COA–R3–CV, 2012 WL 7170479, at *12 (Tenn.Ct. App. Dec. 6, 2012), *perm. app. denied* (Tenn. Apr. 11, 2013) (explaining that "this Court cannot determine whether the trial court abused its discretion" in the absence of factual findings by the trial court); *see also In re Connor S.L.,* No. W2012–00587–COA–R3–JV, 2012 WL 5462839, at *4 (Tenn.Ct.App. Nov.

---

4. The last sentence of the rule reads: "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6)." Tenn. R. Civ. P. 52.01.

5. This principle is constrained by the fact there are discretionary decisions for which Tenn. R. Civ. P. 52.01 compliance is neither applicable nor mandated.

8, 2012) ("findings of fact are particularly important in cases involving the custody and parenting schedule of children," and without such findings "we are unable to afford appropriate deference to the trial court's decision"). " 'Discretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles.' " *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn.2007) (quoting Martha S. Davis, *Standards of Review: Judicial Review of Discretionary Decisionmaking*, 2 J.App. Prac. & Process 47, 58 (2000)). Thus, an abuse of discretion will be found "when the trial court ... fails to properly consider the factors on that issue given by the higher courts to guide the discretionary determination." *Id.*

*In re Noah J.*, No. W2014–01778–COA–R3–JV, 2015 WL 1332665, at *5 (Tenn.Ct. App. Mar. 23, 2015), no perm. app. filed.

■ When the trial court fails to explain the factual basis for its decisions, we may conduct a de novo review of the record to determine where the preponderance of the evidence lies or remand the case with instructions to make the requisite findings of fact and conclusions of law and enter judgment accordingly. *See Lovlace*, 418 S.W.3d at 36; *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn.1997); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn.Ct.App. 2005). Because there are no findings of fact for us to review, we shall conduct our own de novo review to first determine where the preponderance of the evidence lies and then determine whether the evidence, when applied to the applicable legal principles, provides a proper factual foundation for the decision challenged on appeal, that being the parenting schedule.

## IV. De Novo Review of the Evidence

As we begin our analysis of the evidence, we are mindful of the fact the trial court is in the best position to determine whether a witness's testimony is credible, *see Tenn–Tex Prop. v. Brownell–Electro, Inc.*, 778 S.W.2d 423, 425–26 (Tenn.1989); however, in the case on appeal, Father was the only witness and his credibility is not at issue. Moreover, the only stipulation in the record is that Father's mother would corroborate Father's testimony and that she would testify "that he is good with the child and loves his child." Thus, we shall focus our attention on the undisputed facts and Father's testimony, which is unrefuted.

■ At the time of trial, Father was twenty-three years old, Mother was twenty-two years old, and their only child was twelve months old. The parents had been married for a year before the child was born. Father expected to obtain a Bachelor of Science Degree in Elementary Education within two weeks of trial after he completed his duties as a student teacher.

Father testified that he lives in a nice home in Clarkrange with his parents and that his son has a separate bedroom when he stays there. Father stated that Mother lives in an equally nice home that is suitable for their child.

Father explained that he has been very involved with his child and acts as the primary caretaker during his parenting time. He washes his son's clothes, gives him baths, plays with his son, and reads to him. If his son wakes up at night, Father is the one who goes to his room and helps him get back to sleep. He explained that his weeklong visits with his son "worked out excellent," and when they stayed in a cabin at the lake, they went swimming, and fed ducks. Father also stated that he always takes his son to church with him.

Father was questioned about his son's health. Father testified that the child had twice been hospitalized with croup and that he stayed at the hospital with the child when possible. Father was specifically asked whether the child had food allergies. Father stated that doctors and nurses had mentioned the possibility of food allergies but that his son had not been diagnosed with a food allergy. He also testified that his son did not have allergic reactions or trouble breathing after eating "whatever he wanted" during his time with Father.

No evidence was introduced that put Father's parenting skills at issue, and no evidence was introduced to indicate that Mother was a better parent. The only major distinction between the two parents is that Father does not believe the child has food allergies and Mother does; however, there is no proof that the child has been diagnosed with food allergies, and the trial court noted this fact in its oral ruling. At the conclusion of the trial, counsel informed the court that the child had been tested for allergies but the results had not been returned; Mother's counsel agreed to provide the results to the court and counsel for Father when they became available.

As the foregoing established, there is no evidence in this record that the child has food allergies, and the trial court was required to make its ruling without knowing whether or not the child would be diagnosed with food allergies. Nevertheless, the trial court, acting for the benefit of the child, prudently admonished the parents to abide by the doctor's assessment and instructions if it was determined that the child has food allergies.

As our courts have repeatedly acknowledged, considerable deference must be accorded to the trial court's factual findings, *see Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999); however, such deference abates when the trial court fails to make specific findings of the material facts. *See In re Noah J.*, 2015 WL 1332665, at *5.

Having reviewed the record in this case, we find no evidence to support a finding that either parent is better suited or situated to have substantially more parenting time than the other. Furthermore, realizing the child was one year old at the time of trial, we also find no evidence to support a parenting schedule that substantially limits Father's parenting time during the months of September through May but gives him equal parenting time (alternating weeks) in June, July, and August. Therefore, we cannot affirm a parenting schedule that substantially minimizes Father's parenting time compared to that awarded to Mother.

Based on the above legal principles, the fact that the evidence in this record does not justify affording one parent substantially greater parenting time for their one-year-old child than the other, and the fact that the General Assembly has established the aspirational goal for the courts to maximize each parent's participation in the life of the child, *see* Tenn.Code Ann. § 36–6–106(a), we reverse and remand with instructions for the trial court to establish a parenting schedule that maximizes each parent's participation in the life of the child based on all relevant facts and circumstances presented to the trial court at the trial of this case on June 26, 2014, and to set child support accordingly.[7]

## V. Tender Years Doctrine and Child Support

Our ruling renders moot Father's contention that the trial court erroneously

---

7. Our ruling, however, does not mandate that the trial court establish a parenting schedule that provides equal parenting time because crafting a specific parenting schedule remains within the discretion of the trial court.

applied the tender years doctrine in awarding Mother substantially greater parenting time for the parties' one-year-old child and the issue concerning child support. Thus, we shall not address these issues.

## In Conclusion

For the foregoing reasons, we reverse the parenting schedule and remand with instructions for the trial court to establish a parenting schedule consistent with the statutory aspiration to maximize each parent's participation in the child's life, considering all relevant facts and circumstances. The trial court shall also identify the facts upon which the new parenting plan and schedule are based as Tenn. R. Civ. P. 52.01 requires.

Costs of this appeal are assessed equally against the parties.