FILED
06/11/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 3, 2025

**IN RE ADALYNN B.**

**Appeal from the Juvenile Court for Shelby County**
No. FF5046    Tarik B. Sugarmon, Judge

_____

**No. W2024-00658-COA-R3-JV**
_____

This appeal arises from a petition to determine custody and establish parenting time. Following a two-day trial, the court ruled that the parents shall have joint legal custody of their two-year-old child and that the mother shall be the primary residential parent. The court also established a parenting schedule, pursuant to which the mother was awarded more parenting time than the father. The father appeals the designation of the mother as the primary residential parent and the allocation of parenting time. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which KENNY ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Shannon A. Jones, Memphis, Tennessee, for the appellant, Caustephen B.

Juliet Hill-Akines, Memphis, Tennessee, for the appellee, Latisha B.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

Caustephen B. ("Father") and Latisha B. ("Mother") are the parents of Adalynn B., born in January 2022. The parents were engaged at the time of Adalynn's birth, but they broke up shortly after her birth and never married.

Eight months later, on August 31, 2022, Father filed his petition to determine custody and establish parenting time in the Juvenile Court of Memphis and Shelby County, Tennessee. Then, on October 3, 2022, Father filed a motion for temporary visitation, which was heard on October 21, 2022. Father and his attorney attended the hearing, but Mother did not. The court granted the motion and established a temporary visitation schedule

pursuant to an order entered on October 28, 2022; however, for reasons that are very much in dispute, the parties failed to comply with the schedule.

Then, in February 2023, when Adalynn was thirteen months old, Father was deployed to Kuwait as a member of the Tennessee National Guard. In anticipation of a year-long deployment, the parties entered an agreed order, filed on February 22, 2023, that afforded Father three telephone or video visits each week pursuant to a schedule. Not unlike the previous visitation order, the parties failed to comply with the agreed-upon order during Father's deployment to Kuwait.[1] As before, each party blamed the other for the noncompliance.

When Father returned to Memphis, his visitation was sporadic, again the reasons for which are disputed based on what "he said" as contrasted with what "she said."

The case was tried over two days in March 2024 before Juvenile Court Magistrate Lyttonia Cunningham. Three witnesses testified: Mother, Father, and Father's mother. Each parent blamed the other for the visitation difficulties. Mother also testified that Father failed to support their child. Father testified that he provided some support payments. He also testified that he would have provided more support, but he was unable to find a secure means of getting funds to Mother. As with visitation, the parties dispute the relevant facts. However, as Mother notes, Father failed to provide documentation to support his financial support testimony.

At the conclusion of the trial, the court made the following credibility finding from the bench:

> And, again, neither one of you are very credible. Keep that in mind. You know what you want to know. Both of you are very bright people, but you both have -- have taken the stance of what we call plausible deniability.

The final order was entered on April 3, 2024. In pertinent part, the court stated that it had considered the best interest factors set forth in Tennessee Code Annotated § 36-6-106(a) and applied them to the evidence presented. After individually discussing each relevant factor, the court stated:

> 23. All factors being considered, most of these factors weigh equally between the parents. Some factors favor the Mother. At this time none of these factors favor the Father.

---

[1] Father contends that he was awarded ninety-three visits while deployed in Kuwait but was only allowed thirty-seven visits.

24. Counting all the factors considered and set forth herein, the Court finds that it is in the best interest of the minor child that the parties shall have joint legal custody of said child and shall share equally in the major decision making for the child, including education, medical care, extra-curricular activities, and religious upbringing.

25. The Court finds that the Mother shall be named the primary residential parent of the Minor child.

26. The Court finds that there needs to be a transition period before the Court would consider a half and half schedule. The child is still getting used to the Father as he was deployed, though to no fault of his own. There are also still communication problems between the parties.

27. The Court finds the Father shall be entitled to parenting time as set forth herein [and a detailed schedule is set forth in the final order].

The final order also provided that the Parents' Bill of Rights shall be incorporated into the order and that any party desiring to file a written request for review by the juvenile court judge shall do so within ten days of the entry of the final order.

Father filed a request pursuant to Tennessee Code Annotated § 37-1-107(d) with the juvenile court judge for review of the magistrate's ruling. The juvenile court judge, Tyrik B. Sugarmon, denied the request pursuant to an order entered on April 8, 2024. This appeal by Father followed.

## ISSUES

Father raises two issues:

1. Did the trial court abuse its discretion when it named [Mother] the primary residential parent and not [Father]?

2. Did the trial court abuse its discretion by failing to maximize the parenting time of both parents?

## STANDARD OF REVIEW

We review a non-jury case de novo upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law de novo with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re*

*Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). In addition, the trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

Custody determinations, residential schedules, and parenting responsibility decisions are within the broad discretion of the trial judge; accordingly, we review those decisions under an abuse of discretion standard. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)).

## ANALYSIS

Although Father identified two separate issues for our consideration, he combines both issues into one argument. Thus, we shall review both in one analysis.

Father contends that the trial court abused its discretion in designating Mother as the primary residential parent and not maximizing his parenting time by either reaching an illogical or unreasonable decision or by basing its decision on a clearly erroneous assessment of the evidence. Specifically, he argues:

> in weighing [the best interest] factors, the trial court erroneously failed to consider all of the evidence presented that [Mother] had intentionally kept the child away from [Father], and, even after a temporary visitation order was entered, she repeatedly denied [Father] visitation in violation of that order. . . . In weighing each of these factors the court ignored all of the evidence that [Father] was not allowed to participate in a meaningful way that would have attributed to these factors because of the intentional acts of [Mother].

He further argues that in devising a parenting schedule, the court failed to craft a schedule "with an eye toward maximizing the parenting time of each parent." *See* Tenn. Code Ann. § 36-6-106(a).

As explained in *Gooding v. Gooding*, 477 S.W.3d 774 (Tenn. Ct. App. 2015):

> The General Assembly has established the aspirational goal for the courts to craft custody arrangements that permit both parents to "enjoy the maximum participation possible in the life of the child" consistent with the appropriate factors and circumstances. Tenn. Code Ann. § 36-6-106(a). Still, the details of parenting plans remain "peculiarly within the broad discretion of the trial judge." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013)). Furthermore, "[i]t is not

the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Id.* (quoting *Armbrister*, 414 S.W.3d at 693). This is because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, and trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Id.* (citing *Armbrister*, 414 S.W.3d at 693). Accordingly, a trial court's decision regarding the details of a parenting schedule should not be reversed absent an abuse of discretion. *Id.*; *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

*Id.* at 778.

In child visitation and custody determinations, the "polestar, the *alpha and omega*" is the best interest of the child. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001) (quoting *Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983)); Tenn. Code Ann. § 36-6-401 ("In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities."); *In re Briley R.*, No. M2016-01968-COA-R3-JV, 2017 WL 5054304, at *4 (Tenn. Ct. App. Oct. 31, 2017) ("While a trial court has broad discretion in fashioning the details of a parenting plan, the touchstone is the best interest of the child.").

Here, the trial court heard from two principal witnesses, Father and Mother, whose testimony, for the most part, conflicted with the other's testimony concerning past visitation issues as well as support. And as noted, the trial court found neither parent very credible. Although Father's mother testified as well, her testimony was inconsequential in most respects, with one exception. When asked to describe the type of relationship between Father and Adalynn, she testified:

[Adalynn's] kind of reserved because, you know, there's really no bond there. So, we just tried -- he just tried to create moments. Like he would show her the video when they would -- when they were doing the Face Timing. He would show her that. They would play together. They did little -- eating little -- segments where she was kind of, you know, laughing and trying -- he was trying to make her feel comfortable and safe.

Thus, the testimony of Father's mother reveals that Father was attempting to establish a bond with Adalynn, but they had not yet established a close relationship. This is due, in part, to Adalynn being only two years old at the time of trial and Father being deployed to Kuwait for ten months, as well as the failure of the parents to facilitate visitation before, during, and after Father's deployment.

The trial court made findings regarding each of the best interest factors, and we discuss those we believe to be most relevant to the issues at hand. As for the first factor under Tennessee Code Annotated § 36-6-106(a), which pertains to the "strength, nature, and stability of the child's relationship with each parent," the court noted that although Father expressed great frustration in not being able to have consistent visitation before he was deployed, the court found that the factor favors Mother because "she has been the primary caregiver for the child and has provided for her daily needs."

As for the second factor, the court found:

> As to the parties' potential for future performance of parenting responsibilities, the Court finds that this weighs equally as both parents are employed and both have good amount of family support. As to the willingness of each of the parents to encourage and facilitate a parent/child relationship with the other consistent with the best interests of the child, this portion of the factor [weighs] in favor of the Father. The Court finds that the Mother testified that she knew about the order (for visitation) and did not think it was legit, and even after appearing before the court and being reminded of what the order said, the Mother treated the order as a suggestion rather than as a court order. But as to the parents' ability to parent, the Court finds this factor favors both equally.

As for factor 5, which concerns the degree to which a parent has been the primary caregiver, the trial court found that for all of the reasons it cited in factor 1, this factor favors Mother.

As for factor 6, the trial court noted:

> The Court finds that the child is still very young. The Mother testified that the child has a very close relationship with her and her family. The Court finds that the Father is still building a relationship. The Father testified that the child is still a little reserved when in his care. But the Court finds that the grandmother's testimony is credible, and the Father is using the videos from his visits while deployed in developing the relationship with her. The Court finds that each of these parents love and have great affection for the child equally. This factor favors both parties equally.

With regard to factor 7, the court found that the factor favored Mother because "the Mother has made sure the child had care when the Mother returned to work and has continued to make sure the child is in a good environment while the Mother is at work."

As for factors 9 and 10, the Court found these factors favored Mother for the same reasons as set forth in factors 1 and 5 above.

The court found that the remaining factors, 11 through 16, either favored both parents equally or they were not relevant.

The trial court's best interest findings reveal that some factors favored Mother, several favored both parents equally, some were not applicable, but only a portion of one factor solely favored Father.

We also note, as Father argues in his brief, that the trial court made the express finding "that there needs to be a transition period before the Court would consider a half and half schedule." Father interprets this as a conditional ruling by the trial court; therefore, Father suggests, the trial court should have waited a few months before crafting the permanent parenting plan. We disagree, finding that the trial court was acknowledging the fact that Father was making efforts to build his relationship with Adalynn but that would take time. Thus, we place no specific emphasis on this notation by the trial court, other than a positive encouragement for Father to keep building his relationship with Adalynn.

Regarding the trial court's best interest findings, we acknowledge the conflict in the parties' testimony, as well as the trial court's findings of fact that are based on witness credibility. Having reviewed the record, we find that the evidence does not preponderate against the trial court's best interest findings. *See Armbrister*, 414 S.W.3d at 693 ("[A]ppellate courts must presume that a trial court's factual findings on [best interests] are correct and not overturn them, unless the evidence preponderates against the trial court's findings."). And it was based on these findings that the trial court awarded the parents joint custody and decision making, named Mother the primary residential parent, and awarded her more parenting time than Father.

And as noted above, custody determinations, residential schedules, and parenting responsibility decisions are within the broad discretion of the trial judge; accordingly, we review those decisions under an abuse of discretion standard. *Eldridge v. Eldridge*, 42 S.W.3d at 85 (citing *Suttles v. Suttles*, 748 S.W.2d at 429). Pursuant to this standard, we review a trial court's discretionary decision to determine: "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the trial court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the trial court's decision was within the range of acceptable alternative dispositions.*" Gooding v. Gooding*, 477 S.W.3d at 781 (citation modified). In doing so, we review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and review the trial court's legal determinations de novo without any presumption of correctness. *Id*.

Here, we have determined that the evidence does not preponderate against the trial court's best interest findings; thus, there is a factual basis for the trial court's decision. *See id*. Further, the record reveals that the trial court applied the correct legal standard in

making its parenting plan decisions. *See id*. And its decision to name Mother as the primary residential parent and to award her more parenting time than Father was within the range of acceptable alternative dispositions. *See id*.

As it pertains to Father's argument that the trial court failed to maximize his parenting time, we note that the General Assembly established the *aspirational goal* for the courts to craft custody arrangements that permit both parents to "enjoy the maximum participation possible in the life of the child *consistent with the appropriate factors and circumstances*." *Gooding v. Gooding*, 477 S.W.3d at 778 (emphasis added) (citing Tenn. Code Ann. § 36-6-106(a)). However, this goal is aspirational, not mandatory. Considering the appropriate best interest factors and circumstances applicable to this case, we find no abuse of discretion with the parenting schedule crafted by the trial court or its decision to name Mother the primary residential parent.

### IN CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in all respects. Costs of appeal are assessed against the appellant, Caustephen B.

_____
FRANK G. CLEMENT JR., P.J., M.S.