IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 1, 2025



IN RE GRACIE W.[1] ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-0745-23     Cedrick D. Wooten, Judge**

_____

**No. W2024-00478-COA-R3-JV**
_____

The appellant appeals the circuit court's finding that her minor children are dependent and neglected. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT and CARMA DENNIS MCGEE, JJ., joined.

Ada Johnson, Memphis, Tennessee, for the appellant, Gabrielle W.

Jonathan Skrmetti, Attorney General and Reporter; Amber L. Barker, Senior Assistant Attorney General; and Allen T. Martin, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

Gracie W., born May 2020, and Serenity S., born January 2018, (together, the "Children") are two of the children of Gabrielle W. ("Mother").[2] On February 1, 2021, the Tennessee Department of Children's Services (the "Department" or "DCS") filed a petition in the Shelby County Juvenile Court (the "juvenile court") alleging that the Children were dependent and neglected as defined by Tennessee Code Annotated section 37-1-102(b)(13). DCS averred that it received a referral on December 23, 2020, informing

---

[1] This Court has a policy of abbreviating the last names of children and other parties in cases involving termination of parental rights to protect their privacy and identities.

[2] The Children's fathers are not participating in this appeal.

the Department that Mother's oldest child, five-year-old H.W.,[3] "was a victim of nutritional neglect and physical abuse perpetrated by Mother and an unknown perpetrator." Mother transported H.W. to LeBonheur Children's Hospital ("LBCH") on December 23, 2020 to obtain treatment for a laceration to his chin. The Children went with Mother and H.W. to LBCH, and the Department alleged that one of the physicians "expressed concerns regarding issues with Serenity and Gracie's size and weight." DCS further alleged that H.W.'s providers were concerned about his weight and that he had healing spinal fractures, for which Mother had no explanation. DCS developed a non-custodial permanency plan; however, on January 11, 2021, a Child and Family Team Meeting was held. According to DCS, "[i]t was decided that all the children should be placed in the Department's custody to ensure that they meet milestones and thrive." The petition references the family's prior history with the Department, including a January 2016 petition alleging that H.W. was the victim of lack of supervision and a January 2018 referral stating that Serenity was the victim of lack of supervision and environmental neglect. The petition asked the trial court to award DCS temporary custody of the Children and to award Mother supervised visitation with the Children. DCS filed amended petitions on February 8 and February 24, 2021, to correct the name of one of the fathers.

On February 9, 2021, the juvenile court entered an *ex parte* protective custody order finding probable cause to believe that the Children were dependent and neglected as defined by section 37-1-102(b)(13) and that they were subject to an immediate threat to their health or safety if they remained in Mother's legal custody. The juvenile court ratified a new permanency plan on March 11, 2021, which required Mother to "participate in parenting education to learn techniques for providing supportive and prod[uc]tive parenting to her children[,]" "provide employment verification to" DCS, "look for stable housing that will fit into her budget and provide verification once secured[,]" "participate in supervised visits with the child(ren) a minimum of 4 hours per month[,]" and "provide financial support [and] other needs" for the children.

Medical records admitted as evidence at trial reveal that Gracie was hospitalized in July 2020, when she was approximately two months old, for failure to thrive and "poor weight gain." She was discharged from that hospitalization "after demonstrated days of weight gain." Approximately six months later, at a follow-up visit on January 8, 2021, seven-month-old Gracie's weight was "relatively unchanged from hospital admission," and she was again "noted to have poor weight gain." The documenting physician also expressed concern that Gracie "has not seen a medical provider since her discharge from the hospital in July and has essentially missed her 2 month, 4 month, and 6 month well child check" and was delayed in receiving the recommended vaccines. Similarly, in

---

[3] Mother has three children. The Department filed a separate petition asking the juvenile court to find Mother's oldest child to be dependent and neglected. These matters were consolidated for the purpose of trial; however, they are separate matters on appeal. Mother's oldest child is not at issue in this appeal and is mentioned herein only as necessary for context.

January 2021, two-year-old Serenity was found by physicians to have "moderate malnutrition and poor weight gain presenting with significant abdominal distention," "relative wasting of her upper and lower extremities," "delayed bone age," and "borderline macrocytic anemia likely secondary to poor nutrition and vitamin deficiency."

On July 30, 2021, the juvenile court entered an order finding by clear and convincing evidence that the Children were dependent and neglected as defined by section 37-1-102(b)(13)(B), (F), and (G) "based on Mother leaving the children with caretakers who could not properly care for the children, the children's continued diagnosis of failure to thrive without remedy, and Mother's improper guardianship of the children which included how the children presented upon entering the Department's custody." The juvenile court noted that it heard testimony "describing the children's diaper rash, diminished physical states, and nutritional neglect." The Children remained in DCS custody.

Mother requested a rehearing on the petition. Following the rehearing on April 14, 2022, the juvenile court found clear and convincing evidence that the Children were dependent and neglected as defined by section 37-1-102(b)(13)(D) and (F) because

> Mother neglected to provide the children with necessary medical or hospital care and the children are in such condition of want or suffering under Mother's improper guardianship as to injure or endanger their health. Specifically, the Court heard testimony that Mother failed to provide the children with proper nutrition and feeding, failed to take the children to necessary medical appointments, and failed to spend appropriate time with the children to assist in their development. The Court heard testimony and reviewed evidence that Serenity S[.] was two years old upon entering the Department's custody, had not been to the doctor since birth, was diagnosed with failure to thrive, and was nonverbal. The Court heard testimony and reviewed evidence that Gracie W[.] had missed six months of medical appointments, had a flat back head, and could not roll over or pull up at the age of eight months.
>
> The Court found that Mother neglected the above-named children's medical needs and continues to fail to understand their needs, despite completing services meant to address these issues. The above-named children's sibling, H[.] W[.], had been removed from Mother's care two years prior to December 2020 for similar issues. Mother received counseling and other services, [H.W.] was returned to her, but the children maintained similar issues to those presented in 2018. The Court found that Mother took no action to remedy the issues of the children failing to gain weight, lack of proper nutrition, and Mother's lack of transportation. These issues were further

- 3 -

highlighted by [Foster Father's] testimony that the children were gaining weight, thriving, speaking, and meeting developmental milestones.

(Paragraph numbering omitted). Mother then appealed to the Shelby County Circuit Court (the "trial court").

The trial court held a bench trial on February 7, 2024, and entered its final order on February 23, 2024. The trial court found "clear and convincing evidence that the children are dependent and neglected in Mother's care pursuant to Tenn. Code Ann. § 37-1-102(b)(13)(C) as Mother improperly cared for the children and the children lacked proper supervision." The trial court also found clear and convincing evidence that [H.W.] was the victim of severe abuse perpetrated by Mother as defined by section 37-1-102(b)(27)(A)(i). Mother appeals the trial court's final order.

## ISSUES

Mother raises three issues on appeal, which we restate slightly:

1. Whether the trial court erred in finding that the Children are dependent and neglected.

2. Whether the trial court erred in finding that the Children were victims of severe abuse.

3. Whether the trial court made sufficient findings of fact and conclusions of law.

## STANDARD OF REVIEW

As this Court has explained,

[a] child who is suffering from abuse is a dependent and neglected child. *See* Tenn. Code Ann. § 37-1-102[(b)](1[3])(G). A determination that a child is dependent and neglected must be supported by clear and convincing evidence. *See* Tenn. Code Ann. § 37-1-129(a)(1) & (c). Severe child abuse in a dependency and neglect proceeding must also be established by clear and convincing evidence. *In re S.J.*, 387 S.W.3d 576, 591 (Tenn. Ct. App. 2012).

The "clear and convincing evidence standard" is more exacting than the "preponderance of the evidence" standard, although it does not demand the certainty required by the "beyond a reasonable doubt" standard. *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000). The clear and convincing evidence standard defies precise definition. *Majors v. Smith*, 776

- 4 -

S.W.2d 538, 540 (Tenn. Ct. App. 1989). Evidence satisfying this high standard produces a firm belief or conviction regarding the truth of facts sought to be established. *In re C.W.W.*, 37 S.W.3d at 474. Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992).

Our review of the trial court's determinations on questions of fact is de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

*In Re Zaliyah S.*, No. M2019-01241-COA-R3-JV, 2020 WL 3494471, *3 (Tenn. Ct. App. June 26, 2020) (quoting *In re M.D.*, No. M2015-01023-COA-R3-JV, 2016 WL 5723954, at *3–4 (Tenn. Ct. App. Sept. 30, 2016)). "[W]e review the trial court's ultimate findings of dependency and neglect or severe child abuse de novo with no presumption of correctness." *In re Tamera W.*, 515 S.W.3d 860, 870 (Tenn. Ct. App. 2016) (citing *In re Damian M.*, No. E2015-02353-COA-R3-JV, 2016 WL 5928981, at *2 (Tenn. Ct. App. Sept. 30, 2016)).

## ANALYSIS

At the time DCS filed its petition in February 2021, the definition of a dependent and neglected child under the statute included a child "[w]ho is under unlawful or improper care, supervision, custody or restraint by any person . . . ." Tenn. Code Ann. § 37-1-102(b)(13)(C) (effective July 1, 2019). The trial court found

clear and convincing evidence that the children are dependent and neglected in Mother's care pursuant to Tenn. Code Ann. § 37-1-102(b)(13)(C) as Mother improperly cared for the children and the children lacked proper supervision. Specifically, the Court heard testimony and saw proof that the children were malnourished, [H.W.] had unexplained spinal fractures, and the children were developmentally delayed. Mother failed in her responsibility to properly care for and supervise the children. Proof and testimony showed that while in Mother's custody, [H.W.] had not seen a doctor in two years and Gracie [W.] and Serenity S[.] had not seen a doctor since birth. Mother testified that she tried to find a primary care physician for the children but offered no proof or names of doctors she considered. Mother testified she knew her insurance provided transportation to doctor's appointments, but Mother said she could not find time to make appointments 24 hours in advance.

Mother's skeletal argument in support of her first issue is that "there were no finding[s] of facts and conclusions of law present to set out that the [C]hild[ren were] dependent and

neglect[ed] while in the care of the mother. No standard was presented in Court to determine if the Department met its burden by clear and convincing evidence." We do not agree.

Mother failed to provide the Children with the level of care needed for them to thrive, even after the Department intervened years earlier to educate Mother on the level of basic care that a child requires. Not only were the Children malnourished when H.W. was injured in December 2020, but H.W. was also malnourished at that time.[4] In fact, during a parenting assessment completed in June 2021, Mother stated that the Department's concerns were valid and that she was completing the assessment to "learn[] how to maintain with 3 children." Despite this, however, she failed to timely follow through with the additional recommended parenting education following her assessment.[5]

Moreover, the record on appeal supports the trial court's finding that the Children lacked proper supervision. At a juvenile court trial on April 14, 2022, Mother testified that "[H.W.] told [her] that [Mother's sister ("Aunt")] was hitting him constantly" and that Mother had confronted Aunt about this allegation. Despite this, Mother continued leaving the Children in the care of Aunt, including regularly having Aunt watch the Children while Mother was at work. The trial court's factual findings are supported by the record on appeal, and the combined weight of these facts clearly and convincingly establishes that the Children were without proper care and supervision.

Mother also argues that "there was no determination that the [D]epartment proved sever[e] abuse by clear and convincing evidence." However, the trial court did not find that Gracie or Serenity were victims of severe abuse. The trial court only made a severe abuse finding as to H.W., who is not at issue in this appeal. Accordingly, this issue is moot.

Finally, Mother challenges the sufficiency of the trial court's findings of fact and conclusions of law. "Rule 52.01 of the Tennessee Rules of Civil Procedure requires the trial court to state expressly its findings of fact and conclusions of law, even where the

---

[4] Additional medical records in evidence reveal that H.W. was "mildly malnourished" upon his admission to LBCH on December 23, 2020, but that he was able to gain weight prior to his discharge on December 30, 2020. A physician's progress note recorded on December 24, 2020, states in relevant part: "Given the totality of findings for this patient (failure to thrive, poor weight gain, chin laceration with questionable abdominal trauma, and now healing fractures of the vertebral bodies) inflicted injury remains a concern and further investigation is warranted." Mother testified that H.W. had been referred to a gastroenterologist because he would throw up every time he ate but that she had not taken him to see the gastroenterologist since he was returned to her custody in July 2018. Mother took H.W. for a follow-up appointment at the Nutrition Clinic at LBCH on January 28, 2021. During this visit, they met with a registered dietician who noted that H.W.'s weight was the same as it had been at an earlier pediatrician's appointment on January 8, 2021, and that the dietician would have liked for him to have gained some weight during that period.

[5] Mother testified that she completed the parenting education the week of trial; however, she had not provided any proof of such completion to the Department.

parties do not request it." *In re S.J.*, 387 S.W.3d 576, 594 n.9 (Tenn. Ct. App. 2012) (citing Tenn. R. Civ. P. 52.01). As this Court has explained:

> There is no bright-line test for assessing the sufficiency of the trial court's factual findings. [*Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015)]. Generally, however, "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Id.* (quoting *In re Estate of Oakley*, [No. M2014-00341-COA-R3-CV,] 2015 WL 572747, at *11 [(Tenn. Ct. App. Feb. 10, 2015)]).

*In re Houston D.*, 660 S.W.3d 704, 721 (Tenn. Ct. App. 2022). In this case, the trial court identified the evidence it considered, the laws it applied, and its factual findings that support each of its conclusions of law. The trial court's steps in reaching its conclusions are clear, and we conclude that the trial court's order is sufficient to meet the requirements of Rule 52.01.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the Circuit Court for Shelby County. This case is remanded to the trial court for proceedings consistent with this opinion. Costs of this appeal are taxed to the appellant, Gabrielle W., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE